DeCARLO, Judge.
Robbery; fifty-five years.
The appellant was indicted by the grand jury of Montgomery County for robbery and charged with feloniously .taking “the property of Phillip Mephvin, from his person, and against his will. . . .’’At arraignment, with counsel present, appellant pleaded not guilty and not guilty by reason of insanity. Subsequently, he was tried by a jury and found guilty. After a motion for a new trial was denied, appellant gave notice of appeal.
Evidence presented by the State showed that on the night of August 9, 1978, Phillip Mephvin was working at the Site Service Station in Montgomery, Alabama. On that occasion he was confronted on the outside of the service station by a lone, black male with a sawed-off shotgun. Mephvin stated:
“When the man — When I met the man, like I was going to meet him — see I was outside of the building. And this little walkway down the side, and he came around the corner, and I turned my head, and I saw him walking up, and I met him like he was any other customer'. I said, ‘yes, can I help you?’ and he raised the sixteen-gauge shotgun and said, ‘Get inside. This is a robbery.’ After he pulled the stocking over his head.”
After watching the man pull the stocking over his face, Mephvin was led into the storage room and made to lie face-down on the floor.
*390 During the trial, Mephvin identified Eddie Scott as the man with the shotgun. The witness stated that a second man, unseen by Mephvin, joined the man with the shotgun. Further, Mephvin testified that, during the robbery, he became aware of two weapons. The shotgun was placed on top of his head, and a pistol was placed at the back of his head.
According to Mephvin, he was “covered” by the man with the pistol, who said, while continuing to point the pistol at the witness’ head, “If you don’t tell me exactly what I want, I’m going to blow you away.” Meph-vin said that he was asked for the combination of the floor safe by one of the men, and he replied that he did not know the combination of the safe. Mephvin stated that, at that time, he was struck in the head by what he thought was the shotgun. He testified that, afterwards, he was hit at least ten times.with the handle of a push-broom and his hands and feet were bound with a cord.
Mephvin recalled, “I heard footsteps going out the door. They said that the. police was out there. We’re busted. Let’s get out of here. We might as well give up. And then they started running round the storeroom. That’s when they hid the weapons and the pistol and the money.” Mephvin said that in about a “minute or a minute and a half” he untied himself. At that point, he saw a man with a pistol on the outside of the building.
During cross-examination, Mephvin acknowledged that the man wearing the stocking was the man carrying the shotgun. The person who hit Mephvin with the broom handle was not seen by him. Further, he stated that he did not see the appellant inside of the store on the night of the robbery, but he knew that he was there. According to Mephvin, cash in the amount of $150.00 was taken from the cash register. The next morning the cash was found in a paper sack in the storage room. He stated that the money was kept in the cash drawer and that, after the men left, the money was not in the register.
Mephvin testified, “I was threatened that if I didn’t tell them the combination of the safe, that he would blow me away.”
Eddie Scott testified that he had been charged with the robbery of the Site Oil Company on August 9,1978 and that he had subsequently pleaded guilty to that charge. He stated that, on the night in question, he and the appellant were at the Site Oil Company. According to Scott, he was armed with a sawed-off shotgun and the appellant was armed with a pistol. During the trial, the witness identified the appellant and stated that he was also known as “Butch Scott.”
On the night in question, Eddie Scott and the appellant discussed the robbery. After riding by the station a couple of times, they went inside. The witness testified that they were armed at the time. At the trial, he identified the shotgun which he carried and the pistol which the appellant carried. Scott stated that they told the attendant “to come on, go inside the station.” Scott said the attendant cooperated and they took him to the storage room in the back of the station and made him lie down on the floor. Scott testified that, while the attendant was lying on the floor, Baldwin pointed the gun at the attendant and “kept asking him the combination to the safe.” According to Scott:
“At one time, you know, I told him, said let’s go. He told me no. That he he was going to tell him the combination to the safe. Then a person came in the station. I went out front. And he asked he whether he was going the right direction to Tuscaloosa, I think it was. So, I told him, yes. So he left. I went back and I told him, I said, ‘let’s go,’ you know. He told me, says, he’s going to tell me the combination to the safe. So, then, between that time he struck the guy in the head with a pistol. And, so another person came in and he said he had been by there earlier to get some fuel. He said the guy was busy at the time so he left and he had come back to pay him for it. And he said — He asked me where was he. I told him he was gone to get some food, *391 you know, and would be back shortly. So, he wrote his name on a piece of paper and gave it to me. And he left. So, I told him, again, let’s go.”
Baldwin then broke a broomstick and began to beat the attendant. Scott testified that he had taken the money- from the register. Scott stated that, when he and Baldwin were about to leave, they noticed the police. Both men tried to. leave through the rear entrance, but the door was nailed. At that point, Scott said, “We may as well go on out now.” Scott recalled that he threw the shotgun in an old commode, but he could not recall where the pistol was thrown.
During cross-examination, Scott admitted that he was driving the car, but he denied that the robbery was entirely his idea. Also, Scott denied hitting Mephvin with the shotgun or with a broomstick. Scott stated that Baldwin hit the attendant with the pistol and the broomstick but the witness could not say exactly how many times the attendant was hit.
Thomas G. Toddy testified that he was employed as an evidence technician with the Montgomery Police Department on August 9, 1978. He identified, from photographs, a pistol and a shotgun as the guns he found at the scene of the crime.
Montgomery Police Officer Gary Robertson was on duty with his partner on August 9, 1978. He recalled arresting the appellant and Eddie Scott at the Site Oil Company as they were leaving the station. After the two men were arrested, Robertson saw the attendant. The witness described the attendant’s face as being covered with blood. Robertson- stated that, obviously, the man had been beaten.
During cross-examination, Robertson stated that he and his partner noticed there was no attendant at the station when they drove by it. He said that they turned around, pulled into the station, and saw a black male crawling on his hands and knees inside the station. Robertson later learned that the individual was the appellant.
Montgomery Police Officer Art Long testified that he was with Officer Robertson when the appellant and Eddie Scott were apprehended. Long’s testimony was substantially the same as that of Robertson’s.
At the end of Long’s testimony, the State rested its case, and the appellant moved to exclude the State’s evidence. The motion was denied by the court. The appellant did not take the stand, but he recalled Phillip Mephvin. Mephvin testified that he was hit on his back with a broomstick at least ten times.
I
Appellant’s first contention is that his motion to exclude should have been granted because of an alleged fatal variance between the indictment charging a “felonious taking of the property of Phillip Mephvin from his person,” and proof presented by the State to show that the money belonged to Site Oil Company.
The law is well-settled that “in an indictment for robbery, ownership of the stolen property is properly laid in the party in possession, either as owner, or bailee, or agent.” Mays v. State, Ala.Cr.App., 335 So.2d 246. See also Bray v. State, 47 Ala. App. 308, 253 So.2d 531; Howell v. State, 26 Ala.App. 612, 164 So. 764. Additionally, “There is no material variance between an indictment which charges that the property taken was the personal property of a named individual and proof showing that the property belonged to another or to a corporation.” Hobbie v. State, Ala.Cr.App., 365 So.2d 685.
Under the facts in the present case, no fatal variance between the indictment and the proof was shown. The trial court properly denied appellant’s motion to exclude on this ground.
II
The appellant insists that the trial court erred in denying his motion for a mistrial. He argues that the motion should have been granted because, in closing argument, the district attorney said, “From the defense argument, I wonder where Joseph Baldwin was that day?” The appellant asserts that *392 this statement was a comment on his failure to testify at the trial.
An examination of the record indicates that “closing statements were given by respective counsel without objection” and that the jury had already retired to commence its deliberations before the appellant moved for a mistrial. At that time, it was the appellant’s contention that the district attorney’s statement in closing argument was a comment on the appellant’s failure to take the stand.
We notice from, the record, a colloquy between appellant’s counsel and the trial judge which indicates that some comment with which defense counsel disagreed must have occurred during closing argument. There the court said:
“I made the offer then and I make it again to you now to explain to the jury in detail that they can’t consider anything at all about the defendant not testifying. If you want me to, I will.”
At that time, the appellant’s attorney said, “But for the implication that would place in the minds of the jury I would accept that offer.” He also stated, “I believe that is what is called between a rock and a hard place, no sir Your Honor, we will have to turn down that offer.” We examined the record and were unable to find the comment attributed to the district attorney.
It is well-settled that an objection to a portion of solicitor’s closing argument made after the conclusion of the trial and after the judge’s charge to the jury, but prior to the jury retiring for their deliberation, comes too late. Smith v. State, 248 Ala. 363, 27 So.2d 495. In the present case, the facts clearly show that the jury had already retired when counsel objected to the district attorney’s remark. Under these circumstances, the objection came too late. Long v. State, 2 Ala.App. 96, 57 So. 62.
Ill
The testimony in this case showed that Scott, accompanied by the appellant, feloniously took one-hundred and fifty dollars from the cash register of the Site Service Station while Mr. Mephvin was the only attendant on duty. The attendant, as the facts indicate, was forced at gunpoint into the station and was later beaten about his head and back. He was bound from head to foot, and numerous inquiries were made concerning the combination of the safe.
Two officers apprehended the appellant coming out the door of the station immediately after the robbery. They also found the attendant who was badly beaten. Scott testified that, with him at the time of the robbery, was the appellant and that he was a willing participant.
Under these facts, we believe that the necessary robbery elements were shown and that the case was properly submitted to the jury for its consideration. Williams v. State, 48 Ala.App. 737, 267 So.2d 526; Floyd v. State, 52 Ala.App. 291, 291 So.2d 382. The evidence submitted by the State was sufficient to present a jury question as to whether the appellant committed the robbery. Therefore, the trial court was not in error when it overruled the appellant’s motion to exclude the State’s evidence and the motion for a new trial. Young v. State, 283 Ala. 676, 220 So.2d 843; Fields v. State, Ala.Cr.App., 333 So.2d 861.
We have read and examined this record and have found no error prejudicial to appellant; therefore, the judgment of the Montgomery Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.