This is an appeal from a judgment of conviction of robbery in the first degree and a sentence to imprisonment for twenty years The indictment charged: *Page 452 
 "Andrew Craig Johnson, whose name to the Grand Jury is otherwise unknown than as stated, did, in the course of committing a theft of $450.00 lawful coinage and currency of the United States of America, including four (4) $20.00 bills, twenty-three (23) $1.00 bills, sixteen (16) $10.00 bills, and other lawful coinage and currency of the United States of America, a more definite description of said coinage and currency being to the Grand Jury unknown, the property of National Warehouse, Incorporated, a corporation, doing business as Holiday Inn, Fort Payne, Alabama, threaten the imminent use of force against the person of Vickey Regina Stone, with the intent to compel acquiescence to the taking of or the escaping with the property, while the said Andrew Craig Johnson was armed with a deadly weapon, to-wit: A knife, in violation of Section 13A-8-41 of the Code of Alabama, which occurred subsequent to January 1, 1980."
A major insistence of appellant on a reversal is that there was a fatal variance between the indictment and the evidence in that the evidence shows that defendant was armed with a gun and was not armed with a knife. Appellant bases his contention chiefly on the testimony of the alleged victim of the robbery, who testified that on November 29, 1980, while she was the receptionist at the Holiday Inn in Fort Payne, two people entered the Holiday Inn with stockings over their heads. She said that one of the men had a gun and asked for money, and she identified the man as being the defendant. She said that the other person engaged in the robbery "pulled a knife" and cut the telephone cord. A large number of witnesses testified on the call of the State. The defendant offered no testimony
The undisputed evidence for the State shows that law enforcement authorities were alerted soon after the robbery; that the robbers left the scene promptly after the robbery was committed and drove away in an automobile; that thereafter several items were found on the side of the road where the getaway car had been traveling, including a cash register tray, a bag, a large number of silver coins, a knife, a scabbard for the knife and a pistol
After comprehensive instructions and warnings as to his constitutional rights, defendant voluntarily confessed his part in the robbery. He said that he and the other man whom he identified as Chester Davidson went to the Holiday Inn for the purpose of robbing; they had panty hose over their heads; the defendant had a knife and Davidson had a gun. The defendant said that he snipped the phone cord, then left Davidson in the Holiday Inn. After Davidson came out, defendant went with him in the getaway car. Appellant threw the knife out of the car as they were traveling therein before they were captured
Neither party takes any position as to whether, in view of the criminal liability of an aider or abettor for the felony of the principal, the appellant could have been validly found guilty of robbery in the first degree even though Chester Davidson, instead of Andrew Craig Johnson, was armed with a knife. This point is not raised on appeal, and the issue now before us can be decided without reference to it. We conclude that the evidence was sufficient to support a finding that Johnson was armed with a knife. Ordinarily, we would say that the testimony of the victim of the robbery as to which of the two robbers had the knife would be more reliable than any evidence to the contrary. On the other hand, it is clear that under all the circumstances the victim could have been, and probably was, mistaken as to which of the two robbers had the gun and which one had the knife
We are not in agreement with appellant's argument that the evidence failed to show that the particular knife was a deadly weapon. He relies upon Criminal Code § 13A-1-2 (11) as follows:
 "DEADLY WEAPON. A firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury, and such term includes, but is not limited to, a *Page 453 
pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; or any billy, blackjack, bludgeon or metal knuckles."
We agree that the knife here involved was very likely not a switch-blade knife, a gravity knife, a stiletto, a sword or a dagger, but for it to have been a deadly weapon, it is not necessary under the statute for it to have been that kind of knife or like instrument. The knife and the scabbard were both introduced in evidence. We could, of course, arrange to observe the knife itself, as well as the scabbard, in an effort to determine whether it is a deadly weapon, but neither party requests us to do so, and we believe a correct decision can be made without our doing so. Although not all knives are deadly weapons, most, if not all, knives that are made to fit in a sizeable scabbard are adaptable "for the purposes of inflicting death or serious physical injury." The evidence shows that the particular knife was used to cut a phone cord, which of itself evinces its deadly capacity if and when used to kill. This indicates that it was not a stiletto or dagger. It indicates to us that it was more like a bowie knife
It is to be noted also that the indictment does not purport to allege that the deadly weapon with which the defendant was alleged to have been armed was one of the kinds of knives stated in § 13A-1-2 (11). Defendant did not challenge by demurrer or otherwise the sufficiency of the indictment
Appellant states his only other issue as follows:
 "Whether, when denied by sworn denial, the legal existence of a corporation cannot be proven over objection by oral testimony and ownership of property cannot be proven to be in a corporation through oral testimony by one who has no personal knowledge of the fact."
Appellant relies upon Code 1975, § 12-21-201, which provides:
 "In the trial of criminal cases it shall not be necessary for the State to prove the incorporation of any corporation mentioned in the indictment, complaint or information unless the defendant, within 30 days after indictment if the defendant is under bond or within 30 days after arrest on capias, denies the existence of such corporation by a sworn plea."
Within 30 days after indictment, the defendant denied "the legal existence of National Warehouse, Inc., and its corporate existence."
Mr. Jimmy Meadows testified that he was "General Manager" of "Holiday Inn here in Fort Payne" at the time of his testimony and in November of 1980. He said that the Holiday Inn in Fort Payne was "owned by National Warehouses, Inc." and that National Warehouses, Inc., is a corporation and was the owner of the money that was stolen in the robbery. His testimony on cross-examination was as follows:
 "Q. Mr. Meadows, have you ever seen a certificate of incorporation of that organization?
"A. Yes, I believe so
"Q. Where is it on file at?
 "A. You would have to contact Carl Newberry in Atlanta, Georgia
"Q. How did you come to see that?
 "MR. IGOU: Judge, we object to this. It's incompetent, irrelevant and immaterial
"THE COURT: Overruled
 "Q. How did you come to see the certificate of incorporation?
 "A. Because we deal with their bank deposits and their daily operations and its under National Warehouses, Inc
"Q. What is under that?
"A. Holiday Inn, Fort Payne
 "Q. What did that certificate of incorporation that you saw look like?
 "A. I can't really answer that. I've seen a certificate of incorporation. It was National Warehouses, Inc., that owns the Holiday Inn
 "Q. So, you don't know if you've ever seen a certificate of incorporation or not, do you?
"A. No, I can't say
 "Q. And all you know is that's the way you do business under National Warehouses, Incorporation; is that right? *Page 454 
"A. Right
 "Q. That's what you've been told. You work for them and you never have questioned that, have you
"A. No, not really
 "Q. So, your testimony here is based on what your employer has told you about the status of that business; is that correct?
"A. Yes
 "MR. McGEE: Move to exclude the testimony. It's based on hearsay
"THE COURT: I'll deny the motion
"MR. McGEE: That's all I have."
The redirect examination of the witness was as follows:
"BY MR. IGOU:
 "Q. Mr. McGee asked you if you just did business under National Warehouses. I believe you testified that National Warehouse, Inc., owns the Holiday Inn
"A. Yes. That's correct."
Thus concluded Mr. Meadows' testimony
We think that the evidence offered by the State as to the question of the existence of National Warehouse or National Warehouses as a corporation can be justly criticized as vague, and that the evidence on the subject could, if possible, have been more definite and specific. In its oral charge, the court comprehensively instructed the jury that in order for the defendant to be found guilty the jury must be satisfied beyond a reasonable doubt, not only that he was armed with a knife and that it was a deadly weapon, but also that the jury must be satisfied by the evidence "that National Warehouse, Inc., did exist as a legal corporation" and that "If the State has failed to meet that burden, then you cannot convict the defendant in this case."
Notwithstanding the vagueness of the evidence as to the allegation that the property stolen was "the property of National Warehouse, Inc., a corporation," we are persuaded that a jury issue was presented as to such averment and that the jury was justified in being convinced beyond a reasonable doubt of the truth of such averment
Contrary to what may be supposed by some, § 12-21-201 does not bestow a benefit upon defendants in criminal cases; on the contrary, it benefits the prosecution by relieving it of the necessity of proving the incorporation of any corporation mentioned in the indictment, unless in the time required the defendant files a verified plea denying the existence of the corporation. There is no requirement that, in the event of the filing of such a plea, the prosecution prove the existence by a certified copy of the charter of certificate of incorporation or in any other specific way. In most of the cases dealing with §12-21-201 the pertinent verified plea was not filed and the statutory law was applied to preclude a valid complaint by defendant or appellant that the State had not introduced any evidence of the existence of the corporation mentioned in the indictment. A few of the cases deal with the question whether corporate existence has proved so as to refute the verified plea Such a case is Speaker v. State, 16 Ala. App. 33, 75 So. 178
(1917), relied upon strongly, if not chiefly, by appellant However, Speaker v. State does not hold that proof of corporate existence must be made in any specific or definite way. InSpeaker v. State, the indictment charged that defendant as an officer, agent, or clerk of the W.D. Wood Lumber Company, a body corporate, did embezzle or fraudulently convert to his own use certain building materials. There was some evidence on behalf of defendant that there had been an effort to change the corporate name for whom defendant worked to the W.D. Wood Lumber Company, but the undisputed evidence in the case showed that the effort had been unsuccessful and that appellant was not an officer, agent, or clerk of the W.D. Wood Lumber Company, a body corporate, as alleged in the indictment
 "As a general rule corporate character or existence in a criminal prosecution may be established by parol evidence, at least where character or existence is only a collateral incident to the matter in issue, and it is not necessary to produce a certified copy of the company's charter, or to produce the law under which it was incorporated *Page 455 
There is also, however, authority to the contrary; and where the legal existence of a corporation is an essential element of the crime charged, the fact of the legal existence is material and must be strictly proved in order to make out any crime, and it must be proved from the necessary records of the corporation as the best evidence, and not by parol evidence." 22A C.J.S., Criminal Law, § 695
In 23 C.J.S., Corporations, § 921, it is stated:
 "Although it is held in certain jurisdictions that the corporate existence must be proved by the charter or articles of incorporation or a certified or authenticated copy thereof, in general the corporate existence need not be shown by the charter or by the articles of incorporation, but it may be proved by one who has actual knowledge of the fact, or by general reputation, or by proof of corporate user, that is, by proof of the exercise of corporate powers and functions, particularly where statutes provide that users shall be prima facie evidence of the existence of a corporation, and, although there is authority to the contrary, by proof that the company did business under a corporate name, or conducted its business as a corporation."
Although there is considerable difference between statutory robbery as now defined in the Alabama Criminal Code, Title 13A, and common law robbery, which Title 13A supplanted, it would seem that there would be no difference as to the function of an allegation in an indictment as to ownership of the property involved between an indictment for robbery committed prior to the effective date of the Alabama Criminal Code and robbery committed thereafter. As to common law robbery, it has been consistently held in Alabama that it is basically a crime against the person; that the only reason for naming the owner of the property is to exclude the possibility of the alleged robber's being accused of taking that to which he had some right. Riggens v. State,44 Ala. App. 275, 207 So.2d 141 (1968). Ownership of the property is properly laid in the party in possession, either as owner, or bailee, or agent. Baldwin v. State, Ala.Cr.App., 380 So.2d 388
(1980); Hobbie v. State, Ala.Cr.App., 365 So.2d 685 (1978);Moseley v. State, Ala.Cr.App., 357 So.2d 390 (1978); Mays vState, Ala.Cr.App., 335 So.2d 246 (1976); Bray v. State,47 Ala. App. 308, 253 So.2d 531, cert. denied, 287 Ala. 728,253 So.2d 533
§ 13A-8-44 suggests the possibility that under the now statutory law of Alabama, as distinguished from the formerly applied common law in Alabama, it is not as important that an indictment name the owner of the property involved. § 13A-8-44
provides:
 "No person may submit in defense against a prosecution for robbery in any of its degrees that there was no theft because the taking was under a claim of right. Claim of right is not a defense under this article."
Irrespective of the vagueness of the evidence as to the existence of the corporation named in the indictment and that it owned the Holiday Inn at Fort Payne and the property alleged to have been taken by defendant, we are convinced that the evidence was ample to support the verdict of the jury on the issue raised by the defendant's verified plea and that the evidence introduced on that issue was not inhibited by the best evidence rule, which is defined as follows:
 "When a party wishes to prove the terms of a writing, the original itself must be introduced into evidence if available. The original is said to be the best evidence of its terms and, consequently, is to be desired above such secondary evidence as a copy or oral testimony. A witness, therefore, cannot testify to the terms of the writing unless it is shown to be unavailable for some reason other than his own fault
 "Although it is sometimes said loosely that a party must produce the best evidence which the nature of the question admits, there is no rule of law that is so all-encompassing. The law does not usually *Page 456 
require, for example, that a party call an eyewitness to prove a fact as to a condition precedent to the introduction of circumstantial evidence of the fact A marriage may be proved by circumstantial evidence without showing the production of an eyewitness thereto or an official record is not feasible Indeed, the law does not regard circumstantial evidence of a matter as inferior ipso facto in comparison to eyewitness testimony of that matter." Gamble, McElroy's Alabama Evidence, § 212.01 (1977)
Our attention has not been called to any error prejudicial to the defendant, and our search of the record has revealed none The judgment of the trial court should be affirmed
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial is hereby
AFFIRMED
All the Judges concur