675 So.2d 897 (1995)
Nathaniel LeRoy DAWSON and Mark Keith Glaster
v.
STATE.
CR-93-1619.
Court of Criminal Appeals of Alabama.
April 14, 1995.
On Application for Rehearing June 16, 1995.
Certiorari Denied August 18, 1995.
*899 David H. Dowdy, Tuscaloosa, for Glaster.
Shirley T. Chapin, Tuscaloosa, for Dawson.
Jeff Sessions, Atty. Gen., and James Prude, Asst. Atty. Gen., for Appellee.
Certiorari Denied (Glaster) August 18, 1995.
Alabama Supreme Court 1941536.
PATTERSON, Judge.
Nathaniel LeRoy Dawson and Mark Keith Glaster appeal their convictions and sentences resulting from a consolidated trial. Dawson and Glaster were each convicted of first degree burglary, first degree rape, first degree sodomy, and first degree robbery, and they were each subsequently sentenced to four consecutive terms of life imprisonment.[1]

I.
Both appellants argue that the victim's pretrial identifications of them were impermissibly suggestive. See Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); and Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The victim was shown two photograph lineups. Each lineup contained a photograph of one of the appellants and photographs of five other men with features similar to the appellant. In the photographs of the appellants, they were wearing orange jumpsuits, which all prisoners are required to wear. The photographs depict only the appellant's faces, but the collars of the jumpsuits are visible in the photographs. Glaster was the only person wearing an orange jumpsuit in his lineup. Dawson was one of two men wearing orange jumpsuits in his lineup. Furthermore, before the lineups, the victim was informed that the appellants had been arrested and were in jail. Although we agree that these lineups were suggestive, in view of the totality of the circumstances, we do not believe that they were so suggestive as to lead to a substantial likelihood of misidentification.
In arriving at this conclusion, we consider the five factors outlined in Neil v. Biggers. First, the victim had ample opportunity to observe Dawson and Glaster during the commission of the crimes. The crimes took place in the victim's apartment during the day. The entire incident lasted approximately 40 minutes. Neither appellant wore a mask or any other form of disguise, and the victim had sufficient opportunity to observe their faces at close range for extended periods of time. Second, the witness was paying attention during the crimes. Like the victim in Neil v. Biggers, "[s]he was no casual observer, but rather the victim of one of the most personally humiliating of all crimes." 409 U.S. at 200, 93 S.Ct. at 382-83, 34 L.Ed.2d at 412. Third, the victim gave sufficient descriptions of Dawson and Glaster in her statement to the police. Although she was *900 unable to give detailed portraits while giving her statement, she asserted that she could recognize her attackers, and she pointed to her head saying, "They're here. I'd know them if I saw them in a second. I'd know them." Fourth, at the lineups, which was videotaped and which is in the appellate record, the victim demonstrated intense certainty that her identifications were correct. Finally, the lineup was conducted the same day the crimes were committed. Therefore, although the lineup was suggestive, the particular facts of this case render a false identification highly unlikely.

II.
Both appellants contend that the trial court erred in granting the state's motion to consolidate their trials. See Curry v. State, 601 So.2d 157 (Ala.Cr.App.1992). Dawson and Glaster both argue that they were prejudiced by "spillover" evidenceevidence which, although admissible against one codefendant, was allegedly inadmissible against the other codefendant.
Glaster claims that he was prejudiced by the following evidence, which he contends would not have been admissible in a trial in which he was the only defendant: Dawson's wallet, which was found in an apartment rented by an acquaintance of Dawson; a photograph of the victim's sister-in-law, found in Dawson's wallet; and Dawson's extrajudicial statements that he and Glaster had robbed someone and that the photograph depicted the victim.
Dawson claims that he was prejudiced by the admission into evidence of the victim's watch, which Glaster was wearing when he was arrested. Dawson contends this watch would not have been admissible in a trial in which he was the only defendant.
Neither Dawson nor Glaster have met their burden in their advancing this argument. See Holsemback v. State, 443 So.2d 1371, 1377 (Ala.Cr.App.1983) (quoting United States v. Marszalkowski, 669 F.2d 655, 660 (11th Cir.1982): "In reviewing improper denial of severance claims, courts of appeals require that the defendant demonstrate that the trial court abused its discretion by showing that the failure to sever resulted in compelling prejudice.... The defendant fails to meet this burden if he merely asserts that acquittal is more likely if he is tried in a separate action or that much of the prosecution's evidence relates only to one of the codefendants.").
In their briefs to this court, they complain about the alleged prejudicial impact of certain items of evidence, and argue that this evidence would have been inadmissible against them if the trial had not been consolidated. However, they fail to address the specific question of how this evidence prejudiced them. Furthermore, the evidence does not appear on its face to compel prejudice in the minds of the jurors. Therefore, the trial court was within its discretion in granting the state's motion to consolidate.

III.
Both appellants argue that the trial court erred in admitting into evidence the videotape of the victim's statement to the police, and the audiotape of her 911 telephone call to the emergency operator, reporting the crime. See Donahoo v. State, 505 So.2d 1067 (Ala. Cr.App.1986) (videotape), and Bridges v. State, 516 So.2d 895 (Ala.Cr.App.1987) (audiotape).

A.
The appellants each challenge the admission into evidence of the victim's videotaped statement, arguing that it is inadmissible hearsay and that it contains double hearsay. The victim testified at trial, before the videotape was offered into evidence. Her testimony included all of the alleged hearsay contained on the videotape, and she was cross-examined by the defense. The appellants did not object to the victim's testimony regarding the matters they allege are hearsay in the victim's videotaped statement. The erroneous admission of evidence that is merely cumulative is harmless error. Reese v. City of Dothan, 642 So.2d 511 (Ala. Cr.App.1993).
The appellants also contend that the videotape was more prejudicial than probative, merely cumulative, and offered to bolster the *901 testimony of the state's witness. We agree that the videotape was cumulative; however, we do not conclude that it was so prejudicial as to merit reversal.

B.
The appellants each contend that the trial court erred in admitting the audiotape of the victim's 911 telephone call into evidence. The appellants argue that the tape was cumulative, prejudicial, and hearsay. The court admitted the tape over these objections, holding that the tape was part of the res gestae.
"Generally, a person's statement concerning a startling occurrence made while he is perceiving the occurrence, or soon after his perception thereof, and while he is under the stress of a nervous excitement created by such perception, is admissible as tending to prove the truth of the matter asserted."
C. Gamble, McElroy's Alabama Evidence, § 265.01 (4th ed. 1991).
In this case, the appellants left the victim tied up in her apartment. She freed herself soon after the appellants fled at approximately 6:40 a.m. She immediately ran downstairs to a neighbor's apartment and dialed "911" to report the crime. The 911 call was logged in at 7:06 a.m. At the time of the call, the victim was still acting under "nervous excitement" and clearly did not have time to reflect on the events before making the call. Therefore, the court did not abuse its discretion in holding that the tape was admissible as part of the res gestae.

IV.
Glaster raises two issues in which Dawson does not join. Glaster contends that the prosecutor commented on his failure to testify on his own behalf and that he received ineffective assistance of trial counsel.

A.
During trial, arresting officers testified that when they arrested Glaster, they informed him that he was under arrest and that he had the right to remain silent. Glaster argues that this testimony amounts to an improper prosecutorial comment on his decision to assert his Fifth Amendment rights. We disagree. The record is devoid of any reference to the fact that Glaster elected to remain silent after his arrest. Glaster only complains of testimony that the police read Glaster his Miranda rights. The prosecutor did not ask the witnesses any questions involving the interrogation, and the witnesses did not volunteer such information. Therefore, this argument is entirely without merit.

B.
Glaster contends that he received ineffective assistance of trial counsel. See Ex parte Jackson, 598 So.2d 895 (Ala.1992). Glaster did not raise this issue before the trial court. Therefore, this issue was not preserved for appellate review.

V.
Dawson makes two arguments in which Glaster does not join. He argues that the proof was at variance with the indictment charging first degree burglary and that the court improperly sentenced him to consecutive sentences for his four convictions.

A.
Dawson's indictment for first degree burglary alleged that he was armed with a "deadly weapon, to-wit, a knife." He argues that the proof at trial indicated that the knife was actually a deadly instrument, as opposed to a deadly weapon. See Johnson v. State, 406 So.2d 451 (Ala.Cr.App.1981) (holding that whether a knife qualifies as a dangerous weapon depends on how it is used). In this case, Glaster, Dawson's accomplice, held a knife to the victim's throat and pressed it against her neck.[2] We conclude that the manner in which this knife was used made it *902 a deadly weapon and that, therefore, the proof was not at variance with the indictment.

B.
Dawson contends that his sentence to four consecutive life terms was excessive. He argues that he should not have been sentenced to consecutive life terms, because, he alleges, all of the offenses arose from a single transaction. In Robertson v. State, [Ms. CR-93-735, July 8, 1994] ___ So.2d ___ (Ala.Cr.App.1994), this court held that the practice of sentencing a defendant to consecutive punishments for burglary and another felony committed during the same transaction places the defendant twice in jeopardy and is therefore not allowed. This court stated in Robertson:
"Section 15-3-8 [Code of Ala.1975] states:
"`Any act or omission declared criminal and punishable in different ways by different provisions of law shall be punishable only under one of such provisions, and a conviction or acquittal under any one shall bar a prosecution for the same act or omission under any other provision.'
"(Emphasis added.)
"The Alabama Supreme Court in Ex parte McKelvey, 630 So.2d 56, [57] (Ala. 1992), applying § 15-3-8, stated:
"`[T]he appellate courts of this state have consistently held that where a defendant is charged with both burglary and theft (or larceny) arising from a transaction that is the foundation for both charges, the defendant may receive only one punishment.'
"The McKelvey case controls this case. According to McKelvey, the appellant could have been sentenced to two concurrent sentences here, one sentence for the burglary/robbery conviction and one sentence for the burglary/rape conviction."
Robertson, ___ So.2d at ___.
In Robertson, this court was confronted with a factual situation similar to the situation in this case, and we erroneously applied the McKelvey rule to the benefit of that appellant. The appellant in Roberston had been convicted of burglary, robbery, and rape, and the trial court sentenced the appellant to life imprisonment on each conviction, the sentence to run consecutively. On appeal, this court obviously construed the three crimes in Robertson as constituting "the same act" within the meaning of § 15-3-8. Applying McKelvey's "same act" analysis to the facts in Robertson, we held that the appellant could receive only one punishment for his three convictions.[3] Upon our further consideration, we find that the application of McKelvey in Robertson is overbroad.
The holding in McKelvey is specific: double jeopardy applies when a defendant is sentenced to consecutive sentences, i.e., double punishment, for convictions for both theft and burglary arising from the same transaction. McKelvey relies on the fact that "[theft] and burglary are the same kindred of crimes." 630 So.2d at 58 (quoting Wildman v. State, 42 Ala.App. 357, 165 So.2d 396 (1963), writ denied, 276 Ala. 708, 165 So.2d 403 (1964)); compare Biggs v. State, 346 So.2d 467 (Ala.Cr.App.1976) ("Burglary being an offense against property, and rape being an offense against person, we hold that they are separate and distinct offenses, and are completely unrelated.") We narrowly construe the rationale in McKelvey, and find it to be inapplicable to cases involving robbery and burglary, rape and burglary, or sodomy and burglary. Accordingly, we consider the McKelvey theft-burglary situation to constitute a narrow exception to the general application of the Blockburger test to double jeopardy controversies. To the extent *903 that Robertson contradicts this holding it is overruled. See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In the instant case, that exception does not apply.
We now consider whether the trial court violated the prohibition against double jeopardy by sentencing Dawson to four consecutive life terms for burglary, robbery, rape, and sodomy. We conclude that it did not.
"[T]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."
Blockburger, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 306.
According to the Blockburger test, burglary, robbery, rape, and sodomy are all separate offenses:
"`[B]urglary, even where the intent be to commit rape, and rape are separate and distinct offenses,' Beckley v. State, 357 So.2d 1022, 1024 (Ala.Cr.App.1978), as each involves proof of facts not required by the other. See Ala.Code 1975, §§ 13A-7-5, 13A-6-61. The same is true concerning burglary and sodomy. See Ala.Code 1975, §§ 13A-7-5, 13A-6-63. First degree rape and first degree sodomy are similar in that both require proof of `forcible compulsion.' Ala.Code 1975, §§ 13A-6-61, 13A-6-63. However, rape also requires proof of `sexual intercourse,' as defined in § 13A-6-60(1), as opposed to sodomy, which requires the additional proof of `deviate sexual intercourse,' as defined in § 13A-6-60(2). The definitions of `sexual intercourse' and `deviate sexual intercourse' being quite different, we conclude that rape and sodomy each `has at least one statutory element that the other does not.' Sears [v. State, 479 So.2d 1308, 1311 (Ala.Cr.App. 1985)]. Although there was, as McElmore contends, only one `transaction,' there were three different crimes committed during this continuing transaction and McElmore may be convicted and punished separately for each of them. See Clift v. State, 352 So.2d 838 (Ala.1977), cert. denied, 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978); Beckley v. State, supra; Brown v. State, 367 So.2d 557, 559 (Ala.Cr.App.1978), cert. denied, 367 So.2d 559 (Ala.1979)."
McLemore v. State, 562 So.2d 639, 649-50 (Ala.Cr.App.1989).
The victim testified that she awoke when the appellants forcibly entered her apartment by kicking her door open. She said that when she first saw Glaster, he was standing in the hall, clutching a large knife. A jury could reasonably infer from these facts that both appellants intended to commit a felony. Furthermore, these facts were not necessary to prove either robbery, rape, or sodomy. Therefore, Dawson's consecutive sentences for burglary, robbery, rape, and sodomy must be construed as punishments for different offenses. These punishments do not constitute double jeopardy under Blockburger, and they do not fall within the narrow exception to Blockburger carved out in McKelvey. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, COBB, and LONG, JJ., concur.
TAYLOR, P.J., concurs in part, dissents in part.
TAYLOR, Presiding Judge, concurring in part and dissenting in part.
I concur that the audiotape of the victim's 911 telephone call was lawfully received into evidence but based on a different reason than that given by the majority. The Florida District Court of Appeals and the Virginia Court of Appeals have held that "The information contained on the [911] tape is admissible as excited utterances and spontaneous statements...." Ware v. State, 596 So.2d 1200, 1201 (Fla.Dist.Ct.App.1992); Bowling v. Commonwealth, 12 Va.App. 166, 403 S.E.2d 375 (1991). See also 3 A.L.R.5th 1119. Emergency 911 calls may or may not be part of the res gestae of an offense. Res gestae is frequently used as a catch-all for other legal principles. The tape of the 911 *904 call was admissible because it was an excited utterance or a spontaneous declaration. As stated in C. Gamble, McElroy's Alabama Evidence, (4th ed. 1991), "[T]he names `spontaneous exclamation' and `excited utterance' are preferable names because the words res gestae have been used to signify so many different things that their use is calculated to promote confusion...."
I dissent from the majority's holding in Part V of the opinion. I adhere to the rule set out by the Alabama Supreme Court in Ex parte McKelvey, 630 So.2d 56 (Ala.1992). In the subsequent return to remand in Robertson v. State, [Ms. CR-93-735, October 21, 1994] ___ So.2d ___ (Ala.Cr.App.1994), this court, quoting McKelvey, stated:
"`In accordance with this statute [§ 15-3-8], the appellate courts of this state have consistently held that where a defendant is charged with both burglary and theft (or larceny) arising from a transaction that is the foundation for both charges, the defendant may receive only one punishment. Vason v. State, 574 So.2d 860, 863 (Ala. Crim.App.1990) (holding that although the defendant could receive only one sentence for two offenses arising out of the same transaction, the defendant was properly convicted of both burglary and theft that arose from the same transaction); Ex parte Harmon, 543 So.2d 716, 717 (Ala. 1988) (in which this Court reversed the Court of Criminal Appeals' holding that the defendant had not preserved for review the issue of his consecutive sentences for convictions of burglary and theft, and remanded the case to the Court of Criminal Appeals "to determine whether [the defendant] was in fact subject to the imposition of separate sentences"); Gray v. State, 338 So.2d 444 (Ala.Cr.App.), cert. denied, 338 So.2d 445 (Ala.1976); Wade v. State, 42 Ala.App. 400, 401, 166 So.2d 739 (1964) (the Court of Appeals held that "where the same transaction supports both grand larceny and burglary, on conviction there can be but one punishment"); Wildman v. State, 42 Ala.App. 357, 165 So.2d 396 (1963), writ denied, 276 Ala. 708, 165 So.2d 403 (1964) (the Alabama Court of Appeals held that "grand larceny and burglary are of the same kindred of crimes," and that "where the identical transaction is the foundation, a verdict of guilt of one excludes a like finding of the other"; modified on rehearing to hold that the statutory prohibition against double punishment does not forbid convictions for both charges and does not forbid concurrent sentencesonly double punishment).'"
Robertson, ___ So.2d at ___, quoting McKelvey, 630 So.2d at 57-58. (Footnote omitted; emphasis added.)
This court is required to conform its holdings to those of the Alabama Supreme Court. § 12-3-16, Code of Alabama 1975. The McKelvey case controls this issue, and this court is bound by McKelvey. The appellant could be sentenced only according to the perimeters specifically set by the Alabama Supreme Court in McKelvey.
The majority opinion in this case would draw a distinction between this case and McKelvey on the basis of what crime is subsequently committed by the burglar after the breaking and entering. The majority seems to say that the principles of McKelvey are nullified if the crime subsequent to the burglary is rape, sodomy, or robbery instead of theft. I do not agree.
If the rule of law as set out in McKelvey by our highest court is to be changed, then that Court is the one to do it.

On Application for Rehearing
PATTERSON, Judge.
Nathaniel LeRoy Dawson was convicted of first degree burglary, first degree robbery, first degree rape, and first degree sodomy, and was sentenced to life imprisonment on each conviction, these sentences to be served consecutively. We affirmed Dawson's convictions and sentences in an opinion, Dawson v. State, 675 So.2d 897 (Ala.Cr.App.1995). However, in that opinion, we failed to address one issue Dawson raised on direct appeal.[1] In order to address that issue, we grant Dawson's application for rehearing, and we extend our opinion. We note that the *905 other issues raised in Dawson's application for rehearing are without merit.
Dawson argues that the trial judge erroneously refused to allow officer J.R. Simpson to testify as to the contents of Dawson's statement. At trial, Officer Marty Sellers testified that he arrested Dawson. He further testified that after taking Dawson into custody, he read Dawson his Miranda rights.[2] The scope of Sellers's testimony was limited to the procedures followed in arresting Dawson. Sellers was not asked whether Dawson made a statement, and he did not volunteer such testimony. In fact, the record does not show that Dawson ever made a statement to Sellers. On cross-examination, Dawson did not attempt to elicit testimony regarding any statements Dawson may have made to Sellers.
After Sellers's testimony, Simpson testified for the prosecution.[3] Simpson testified that he had investigated the crime scene and had collected evidence. Dawson was not arrested at the crime scene, and the record reflects that Simpson was not present at the arrest. Simpson was not a party to the transaction in which Sellers apprised Dawson of his Miranda rights. At trial, the prosecution did not elicit testimony from Simpson regarding any conversation he had had with Dawson. On cross-examination, Dawson asked Simpson to relate the contents of an extrajudicial statement Dawson had made.[4] The trial court sustained the prosecution's hearsay objection to this testimony.
Dawson argues that due to Sellers's testimony that he advised Dawson of his Miranda rights, Simpson's testimony regarding the contents of Dawson's statement is admissible under the doctrine of completeness. This argument is without merit, and stems from a misapplication of the rule. By its very terms, the doctrine of completeness relates only to matters contained in a single conversation. See Leonard v. State, 551 So.2d 1143 (Ala.Cr.App.1989). Simpson was not a party to the conversation between Sellers and Dawson, and Simpson was not present when that conversation occurred. Furthermore, Simpson had not previously testified to any portion of any conversation or transaction between himself and Dawson. Therefore, the doctrine of completeness does not apply in this case, and Simpson's testimony to any statement that Dawson made was properly excluded as hearsay.
AS TO DAWSON, APPLICATION GRANTED; RULE 39(k) MOTION DENIED; OPINION EXTENDED; AFFIRMED. AS TO GLASTER, APPLICATION OVERRULED; RULE 39(k) MOTION DENIED.
All Judges concur.
NOTES
[1] The trial court did not indicate whether the sentences were to run concurrently or consecutively; therefore, they are presumed to run consecutively. Rule 26.12(a), Ala.R.Crim.P.
[2] We note that a person is criminally liable, as an accomplice, for all crimes committed by another if "[h]e aids or abets such person in committing the offense." § 13A-2-23(2), Code of Ala.1975. We conclude that Glaster and Dawson were accomplices. Therefore, the fact that it was Glaster, rather than Dawson, wielding the knife is irrelevant.
[3] Ex parte McKelvey, 630 So.2d 56 (Ala.1992), addresses double jeopardy only as it relates to multiple punishmentsnot multiple convictions. In this vein, Ex parte McKelvey cites Wildman v. State, 42 Ala.App. 357, 165 So.2d 396 (1963), writ denied, 276 Ala. 708, 165 So.2d 403 (1964), for the proposition that "the statutory prohibition against double punishment does not forbid concurrent sentencesonly double punishment." Ex parte McKelvey 630 So.2d at 58. But see McKelvey v. State, 630 So.2d 60, 62 (Ala.Cr.App. 1993) (observing that multiple convictions with concurrent sentences may trigger double jeopardy when "determining the number of convictions for purposes of applying the Habitual Felony Offender Act").
[1] Dawson's codefendant, Mark Keith Glaster, does not join in this issue.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Several other prosecution witnesses testified after Sellers and before Simpson.
[4] The transcript of a hearing on a motion in limine, contained in the record, shows that Dawson made the statement at issue to Simpson at the police station; that Dawson made this statement after Sellers had arrested Dawson and had advised him of his Miranda rights; that only Dawson and Simpson were present when Dawson made this statement; and that Simpson informed Dawson of his Miranda rights before accepting the statement.