71 So.2d 1

**WATERS et al.**

v.

**W. O. WOOD REALTY CO.**

6 Div. 320.

Supreme Court of Alabama.

Jan. 21, 1954.

Rehearing Denied March 25, 1954.

Berkowitz, Fleisher & Miller, Birmingham, for appellee.

Wm. S. Pritchard, A. W. Jones, Victor H. Smith, Pritchard & McCall, Birmingham, for appellants.

PER CURIAM.

This is an appeal from a judgment rendered for the plaintiff by the court without a jury for the amount of a broker's commission for the sale of certain described real estate.

Appellee, as such broker, claimed and obtained a judgment for his fee in negotiating a contract for the exchange by appellant of some Birmingham property with Max· Weintraub: the property being a certain brickmaking industry, consisting of the necessary appliances together with a lease of the land on which it is situated. The contract, dated April 17, 1948, provides that Weintraub is to pay appellant $27,250, of which $1,000 was paid as earnest money, and on closing the sale $10,-417 was to be paid in cash, and Weintraub was to assume a mortgage on the property of appellant for $15,833. The contract provides that appellant, to whom we will refer as Waters, is to take over the brickmaking plant Monday, April 19, 1948, and all income at the plant is to be held in escrow until satisfactory title is passed on appellant's property. The contract to be closed and deed delivered on or before "20–25 (* * * [?]) days from the date hereof". The $1,000 earnest money was paid to appellee, the broker, to whom we will refer as Wood, and Waters went into possession of the brickmaking business and conducted it until May 4, 1948 when he wrote to Weintraub, with a copy to Wood, as follows:

"Birmingham, Alabama
"May 4, 1948

"Mr. Max Weintroub
"Birmingham, Alabama.

"W. O. Wood Realty Company
"Agent for Max Weintroub
"506 North 21st Street
"Birmingham, Alabama

"Gentlemen:

"This is to advise you that the undersigned, Waters Theatre Company, by N. H. Waters, has had its agent, Mr. J. F. Ford, Jr., check over the figures which you gave to him; also the representations which you made to me, reference the property located at 1617 2nd Avenue South, known as Dunbrik Products Company, and said business. Mr. Ford reports, and the undersigned has verified the fact that the figures given to Mr. Ford, referred to in the contract entered into with you on April 17, 1948, are incorrect. The representations which you made to the undersigned about the said property and business conducted thereon, have also been found to be incorrect.

"Material representations were made to Mr. J. F. Ford, Jr., and also to the undersigned, reference said property and business. The fact that said representations made by you, and the figures given by you were incorrect has now been learned by the undersigned.

"For the reasons stated, this is to advise you of the cancellation by the undersigned of the said contract entered into with you on said date for the exchange of properties as therein provided for.

"The property known as 1617 2nd Avenue South, Dunbrik Products Company and said business is your property. The keys have heretofore been tendered to you by Mr. J. F. Ford, Jr.

"Requested that your agent, W. O. Wood Realty Company, return to you

forthwith the earnest money shown by the said contract in the amount of $1,000.00, stated to have been deposited by you with your broker.

"We have heretofore tendered the keys back to you to your property and business, and you are responsible for your property and business.

"We hereby again tender back to you all things of value which belong to you referred to in said contract. The contract is cancelled insofar as the undersigned is concerned on account of said misrepresentations as herein stated, and the failure of the figures given by you to Mr. Ford, Jr., to stand up. Said figures were found to be inaccurate and untrue.

"Very truly yours,
"Waters Theatre Co.
"By N. H. Waters (s)."

Weintraub received a return of the brickmaking business and finally disposed of it to another. The letter to Weintraub discloses the claim Waters made, on which he based his right to rescind the contract, which is the basis of his contention in this suit that he is not liable to Wood for his brokerage fee for negotiating the contract of sale with Weintraub.

The contract of April 17, 1948, between Waters and Weintraub, contains a provision, apparently on a form used by Wood, by which "the undersigned owners" (doubtless meaning both parties to it) agree to pay Wood, who did not sign the contract, as compensation for negotiating it, the amount of the sales commission provided for by the Birmingham Realty Board. Mr. Camtrell, representing Wood in the transaction, undertook to testify that an agreement to pay $2,000 as the fee was verbally made. But that testimony was excluded by the court.

In and about the negotiations between Waters and Weintraub, Waters was largely represented by one Ford who was dead at the time of the trial and could not testify. The contract had a clause in it that the "agreement to exchange these properties based on figures given to Mr. J. F. Ford, Jr.," the one referred to above. Those figures seem to have been with reference to the cost of manufacturing the brick, the condition of the machinery, the amount of business done by the brick plant, orders on hand and other details. Ford made a memorandum of some of those representations, but having died he could not testify and the court excluded his memoranda as evidence. Whether that was error is one of the serious controversies on this appeal. But Waters testified that Weintraub represented to him that the plant then and there had orders on hand for a million or more brick: that while orders had been given for 1,300,000 brick, at least half of that order had been filled, and it was subject to cancellation by the customer for any balance not delivered, and this purchaser cancelled the order after Waters had delivered 50,000 brick and after some 650,000 brick had been delivered by Weintraub.

■ It is contended by Waters that the inference in the letter of May 4, 1948 was with reference to such details, where it is assigned as a reason for cancelling the contract for the falsity of representations to Waters. Waters contends that by reason of the misrepresentations made by Weintraub to him and to Ford, he had a right to rescind the contract which he did by that letter. He did not thereafter have possession or control of the plant. And while Weintraub did retake possession of it, he did not agree to a rescission but sued appellant (Waters) for a breach of the contract. He recovered a judgment over substantially the same defense here made to Wood's suit, when judgment was reversed Waters v. Weintraub, 255 Ala. 530, 52 So.2d 510. What has afterwards occurred with reference to that suit does not appear. The reversal of the judgment in that suit and such final judgment as may be rendered in it are not controlling in the instant suit, although the same defense was interposed. It is between different parties.

■ The contention of Waters is that if the contract between him and Weintraub was subject to rescission by Waters for

fraud perpetrated by him either actually or constructively, and was so rescinded by him on that ground within a reasonable time, of which Wood, the broker, had notice before his commission was paid, he cannot recover of Waters the amount of such claim.

It is our view that the principle of law as thus contended for by Waters, being well supported by authority and reason, is sound and should be given effect when applicable. McCarthy v. Reid, 237 Mass. 371, 129 N.E. 675, 12 A.L.R. 1000; Lundeen Corp. v. Barlow, 120 Cal.App. 391, 7 P.2d 1102; Webb v. Durrett, Tex.Civ. App., 136 S.W. 1189: contra, Deweese v. Brown, 55 Colo. 430, 135 P. 800.

The McCarthy case, supra [237 Mass. 371, 129 N.E. 676], refused to follow the Deweese case as being unsound, and observed: "The plaintiff cannot recover on the ground that he produced a customer to exchange property with the defendants because the latter and O'Brien did not make any valid and binding agreement for such exchange; the agreement entered into, having been procured by the fraud of O'Brien, could have been and was repudiated by the defendants." It was also observed that this was true although the broker acted in good faith and was not a party to the fraud, but was "not entitled to a commission as he failed to accomplish what he was employed to do".

■ This is a situation where Wood's right to a commission depends upon the validity of the contract between Waters and Weintraub. The parties to that contract, if it is valid, cannot by any arrangement between themselves defeat the claim of the broker for compensation.

■ If there was a misrepresentation by Weintraub to Waters or to his agent Ford of a material fact which influenced the transaction, it is of no consequence that it was made in good faith since it was by a seller to the purchaser, which status requires the material representations to be truthful. Shahan v. Brown, 167 Ala. 534, 52 So. 737; Harton v. Belcher, 195 Ala. 186, 70 So. 141; Tillis v. Smith Sons Lbr. Co., 188 Ala. 122, 65 So. 1015; Title 7, §§ 108 and 109, Code.

The question on this appeal is not whether Wood was guilty of bad faith in negotiating the contract between Waters and Weintraub, but it is whether Weintraub defrauded Waters into making the contract, sufficient to justify Waters in rescinding it, which he attempted to do. It is important to inquire whether the court commited error in a material respect in excluding certain features which Waters has assigned as error.

One of those questions relates to the meaning of that clause in the contract which states that "agreement to exchange these properties based on figures given to Mr. J. F. Ford, Jr." Ford was the agent of Waters and went to inspect the operations of the business of Weintraub, brickmaking, and the books showing the cost of such business and the status of its operations. Mr. Cantrell, a witness for Wood, testified as to what that feature of the agreement meant, as follows:

"It is strictly meant that there would be so many bricks made per minute, per hour, per day, for eight hours per day. There was a certain amount of chemicals to go in there to make those brick. It also meant they cleared a certain amount, to make so many thousand brick, they cleared $7.50 a thousand on those brick. That is what N. H. Waters was interested in. This is all he was interested in. This is why he had Ford to go and stay two days and check it, and he stayed two days and checked it, and got all of those analysis, and he checked the machines and everything else, and knew exactly what it was doing before that contract was signed."

Waters testified with reference to that contract, which is dated April 17, 1948, and as to the meaning of that feature of it which is quoted above, stating in substance that a certain memorandum then exhibited

to him, dated April 15, 1948, discloses some of the figures which were made to Ford and which he wrote down in the presence of the witness before the contract was entered into: that he saw Ford write those figures down; that memorandum was offered in evidence by the defendant. Objection was made to it on the general grounds, which objection was sustained with exception taken. That memorandum contains figures showing sales made in January, February and March 1948, the cost of labor and material, showing the total cost with a gross receipt and the sale price, and also stating that they "have on hand orders for over one million brick". Another memorandum was exhibited to Waters who testified with reference to it, that it represented figures taken from the ledger and journal sheets of the Weintraub business and that "it is a correct summary of the facts and figures which were taken from the journal and ledger sheets". Objection was made to the introduction of the memorandum on general grounds. The objection was sustained, after the witness had testified further that he did not know where the ledger sheet was at the time of his testimony and that he had made no effort to obtain it and had not "subpoenaed the ledger sheet". The memorandum recites that it is from the books of the company.

It is earnestly insisted by Waters that the court erred in not receiving those memoranda, each separately, as they were offered in evidence for the purpose of explaining what is meant by the clause in the contract which has been quoted above.

As shown above, the witness Cantrell had stated what was the meaning of that clause and to what it referred, that Ford was to stay at the plant a couple of days and check its operations to determine whether or not there was a profit made of seven dollars and fifty cents per thousand for brick. Ford made the memoranda referred to above while at the plant and in the presence of Waters.

Waters takes the position in the first place that those memorandum sheets referred to were admissible in evidence under section 415, Title 7, Code, applicable to business entries. The trouble with that contention is that the book entries were not thereby offered in evidence and the memorandum as a record of what Ford did in an inspection of the books was not one which was made in the regular course of any business, and it was not the regular course of business to make such memorandum or record at the time. The only theory which we think would justify this evidence would be in respect to its connection with that term of the contract quoted above which provides that "the agreement to exchange these properties based on figures given Mr. J. F. Ford, Jr." We think there is no doubt of the materiality of the information shown on those memorandum sheets. They were in existence at the time the contract was made.

Our inquiry therefore is whether or not parol evidence may be used to identify them as being at least some of the figures referred to in the contract quoted above. Specifically, it is whether or not they may be identified as such by parol evidence when the writing does not so identify them.

In the case of Forst v. Leonard, 112 Ala. 296, 20 So. 587, 589, the principle here applicable seems to be fully settled, quoting with approval from an English case it is observed: "'If you find a reference to something, which may be a conversation, or may be a written document, you may give evidence to show whether it was a conversation or a written document; and, having proved that it was a written document, you may put that written document in evidence, and so connect it with the one already admitted or proved.'" And, again, "But merely by clearing away an ambiguity or uncertainty in the reference of one part of this wholly written contract to another, such evidence (parol evidence was referred to) brings the separated parts together. * * * it is thoroughly well established, there (England) and here, that where a

contract, required to be in writing by the statute of frauds, rests upon the contents of two separate papers, and the only thing lacking to a compliance with that statute is the identification of the two papers in their relation to each other, that identification may be supplied by oral evidence."

■ In such a situation a reference in the contract to other "figures" may, as said above, refer to another writing, and whether so or not, and to what the reference was intended to apply, may be shown by parol evidence. That principle was reaffirmed in the case of Fidelity & Casualty Co. v. Raborn, 234 Ala. 31, 173 So. 402.

■ The principle that a written contract supersedes all negotiations between the parties is inapplicable where those negotiations constitute a fraud in procuring its execution. Lundeen Corp. v. Barlow, supra.

It was therefore error to exclude the memorandum referred to as exhibit No. 7. That exhibit tends to show that a representation was made in respect to the amount of sales in the months of January, February and March, 1948. In order to show a misrepresentation with respect to that matter Waters proposed to introduce exhibit No. 8, which consisted of memoranda made by Ford in the presence of Waters, taken from the books of Weintraub in respect to those sales and showing that the sales during those three months were $10,127 instead of $15,213 as shown by exhibit No. 7. If exhibit No. 8 is admissible, it is not on the same theory as applies to exhibit No. 7. Exhibit No. 7 is a memorandum of the sales supposed to have been made prior to the contract in question and as represented by Weintraub to Ford, as referred to in the contract. In order to show that that representation was not true the matter contained in exhibit No. 8 was offered, which consisted of a copy made by Ford in the presence of Waters after Waters and Ford took over the plant, taken from the books of Weintraub and shows what those sales were during those three months. Therefore, exhibit No. 8 does not contain matter represented to Ford, referred to in the contract, but is intended to contradict those figures as being true.

■ The question, therefore, is whether or not this can be done by testimony as to what the books of Weintraub show without producing the books themselves. That question seems to be controlled by another principle which is to the effect that "where the contents of a writing (here the books) are not directly in issue the matters contained in the writing may be proved by parol evidence without accounting for the failure to produce the writing". 32 C.J.S., Evidence, § 787, note 3, et seq. p. 713; Kershaw Mining Co. v. Lankford, 213 Ala. 630, 105 So. 896.

■ It would appear from the foregoing discussion that the memorandum made by Ford, offered as exhibit No. 7 dated April 15, 1948, is admissible in connection with the evidence tying that into the contract of April 17, 1948 in connection with figures given to Ford, and that the memorandum, which is exhibit No. 8, is admissible notwithstanding it is secondary evidence showing that the books of Weintraub, who is not a party to this suit and not interested in it, contradict the figures shown by exhibit No. 7.

For the error indicated in ruling on the evidence, the judgment should be reversed and the cause remanded.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and CLAYTON, JJ., concur.