The Montgomery County Grand Jury indicted appellant, James Edward Dewhart, on October 8, 1982, in a four-count indictment, for the capital offense of murder committed during the course of a robbery. Appellant was found guilty as charged and was sentenced to life imprisonment without parole in accordance with the jury's recommendation.
Testimony at trial revealed that at approximately 12:30 a.m. on the morning of August 8, 1982, appellant robbed employees of a Shoney's Restaurant at gunpoint. Afterwards he fled, but a customer in the restaurant followed appellant's car in what escalated into a high speed chase. Appellant's pursuer alerted a police officer in an unmarked car and the officer joined the chase. While traveling on an interstate highway at speeds in excess of one hundred miles per hour appellant discharged his gun, shattering his rear windshield and damaging the police car. Finally, appellant took an exit off the highway, stopped and abandoned the car. Appellant and the police officer exchanged gunfire. Later, backup patrol cars arrived on the scene and several volleys of gunfire ensued. During this time, appellant kept up a steady stream of threats and obscenities directed toward the police officers. Finally, he was wounded and captured. Investigating officers found a handgun, a sawed-off shotgun and a bandolier on the scene.
Later, after the car used in the robbery and flight had been impounded, one of the investigating officers noted a substance leaking from the rear of the car and a fetid *Page 169 
smell emanating from the trunk. The trunk was opened and the decomposing body of Curtis Daniel Scott was discovered there. His head was covered with a plastic apron attached at the neck with a terry cloth strip.
An autopsy on the body revealed that Scott died of a gunshot wound to the back of his head, which was later shown to have been inflicted by the handgun in appellant's possession.
Appellant admitted that the guns used in the robbery and shoot-out with the police were his, that his gun caused Scott's death and that the car used by him in the robbery at Shoney's belonged to Scott. He denied that he stole Scott's car in order to rob Shoney's, intentionally killing Scott in the process. Instead, appellant maintained that Scott shot himself during a game of Russian Roulette and that afterwards he was frightened and did not know what to do with Scott. He put the plastic apron over his head so that the blood wouldn't get on him and put him in the trunk of the car, planning to take him back to where he lived, but instead he proceeded to Shoney's Restaurant and robbed the establishment.
Appellant contends that the trial court erred in permitting the State to present testimony concerning appellant's robbery of Shoney's Restaurant and the subsequent shootout with the police.
Appellant's argument in this regard is two-pronged. First, he maintains that the State should not have proceeded to trial on the indictment for capital murder only, when the evidence in support of the indictments against him for robbery of Shoney's Restaurant and for attempted murder of two policemen was stronger than the circumstantial evidence of the capital murder charge of which he was convicted. Appellant admits that he is not aware of any law permitting a defendant to choose which charge he wishes to go to trial on, and we are similarly unaware of any legal basis for such a choice by a defendant.
Second, appellant asserts that testimony concerning the robbery of Shoney's Restaurant, the subsequent flight, and the shootout with the police was introduced solely to prejudice the jury against him and thus should not have been admitted into evidence.
It is clear that evidence of a defendant's commission of collateral crimes is generally inadmissible as substantive evidence offered to establish guilt of a particular crime. E.g., Miller v. State, 405 So.2d 41 (Ala.Cr.App. 1981); C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977). There are, however, several well-established exceptions to this general exclusionary rule. E.g., Goodman v. State,401 So.2d 208 (Ala.Cr.App.), cert. denied, 401 So.2d 213 (Ala. 1981);Watson v. State, 398 So.2d 320 (Ala.Cr.App. 1980) cert. denied,398 So.2d 332 (Ala. 1981), cert. denied 452 U.S. 941,101 S.Ct. 3085, 69 L.Ed.2d 955 (1981); Hayes v. State, 384 So.2d 623
(Ala.Cr.App. 1979), cert. denied, 384 So.2d 627 (Ala. 1980);McElroy, supra.
Clearly, in the case sub judice the robbery-murder of Curtis Scott, the robbery of Shoney's Restaurant and the subsequent shoot-out with the police, were inseparable crimes, part of one continuous criminal transaction. Testimony concerning the robbery of Shoney's, the capture of appellant, the discovery of Scott's body in the vehicle used by appellant in the robbery, and the discovery of the murder weapon was thus admissible as tending to prove that appellant robbed and murdered Curtis Scott. Terry v. State, 397 So.2d 217 (Ala.Cr.App.), cert. denied, 397 So.2d 223, (Ala. 1981); Love v. State,372 So.2d 414 (Ala.Cr.App. 1979); Parsons v. State, 251 Ala. 467,38 So.2d 209 (1948).
Appellant next alleges that he was denied a fair trial because no black persons were on the jury which convicted him. He points out that although Montgomery County's population is forty percent black, the jury venire consisted of less than thirty percent blacks, that he is black and that he was convicted by an all-white jury. Appellant thus implies that blacks were systematically excluded from the jury. *Page 170 
Such implication by appellant is insufficient to establish a denial of the constitutional right to a fair trial. In Swain v.Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court recognized that a defendant's constitutional rights might be violated if there existed a pattern of deliberate and continued exclusion of blacks from juries by the State. However, the court also observed that a defendant bears a heavy burden in attempting to demonstrate systematic discrimination of constitutionally significant magnitude. In the case before us appellant made no attempt to prove systematic exclusion of blacks from juries in Montgomery County, and hence his allegation fails. Cf. State v. Brown,371 So.2d 751 (La. 1979). (Defendant presented several witnesses who testified, making out a prima facie case, unrebutted by the State, that there had been systematic exclusion of blacks from the particular petit jury and from prior petit juries.)
Lastly, appellant argues that the indictment charging appellant with intentionally causing the death of Curtis Daniel Scott during the course of a theft accomplished by the use of force and with a deadly weapon was defective because it did not use the word "robbery" as does § 13A-5-40 (a)(2), Code of Alabama (1975), in defining capital offenses. That section provides the following: "(a) The following are capital offenses: . . . . (2) Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant;" Robbery in the first degree is defined in §13A-8-41, Code of Alabama (1975), as follows:
 "(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another."
Section 13A-8-43, Code of Alabama (1975), defines robbery in the third degree as follows:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
We find that the crime described in the four-count indictment was robbery within the meaning of §§ 13A-5-40 (a)(2), 13A-8-41
and 13A-8-43. The indictment was, therefore, not defective.
We have carefully searched the record for errors prejudicial to the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.