471 So.2d 507 (1984)
Willie C. BROOKS
v.
STATE of Alabama.
4 Div. 211.
Court of Criminal Appeals of Alabama.
November 13, 1984.
Certiorari Quashed June 7, 1985.
*508 Denny L. Holloway, Dothan, for appellant.
Charles A. Graddick, Atty. Gen., and Mary Ellen Fike Forehand, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 84-217.

ON REHEARING
TYSON, Judge.
On June 26, 1984, this court affirmed this cause with opinion. That opinion is hereby withdrawn and the following is substituted therefor.
Willie C. Brooks was indicted for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and the judge set sentence at 25 years' imprisonment in the penitentiary.
Sometime between 9:00 a.m. and 10:00 a.m. on the morning of February 23, 1983, Dee Snell parked her car at the Northside Mall in Dothan. As she was getting out of her car, a black man, whom she identified as the appellant, stuck a gun in her back and said, "Lady, I need money. I won't hurt you. Give me your money." (R. 19). Ms. Snell dumped her purse onto the hood of her car and she gave the appellant six dollars. The appellant then told her not to tell anyone or he would kill her.

I
Before the jury was struck in this case, defense counsel objected to the jury venire. He stated that the juror list had been divided into two lists and the venire used in this case contained three blacks while the other list included twelve blacks. Defense counsel alleged that the number of blacks on the venire was disproportionate compared to the number of blacks in the population of Houston County, and therefore, the appellant, because he is black, was deprived of a fair trial by his peers.
"In Swain v. Alabama, 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965), the Supreme Court recognized that a defendant's constitutional rights might be violated if there existed a pattern of deliberate and continued exclusion of blacks from juries by the State. However, the court also observed that a defendant bears a heavy burden in attempting to demonstrate systematic discrimination of constitutionally significant magnitude."
Dewhart v. State, 455 So.2d 167 (Ala.Crim. App.1984).
Judy Byrd, who handles the criminal division of the circuit clerk's office, testified that it is the regular practice of the office to divide the jury venire list in half and the first half is used in the courtroom upstairs while the bottom half is used in the courtroom downstairs. She stated that when the list is divided, she is unaware of which jurors are black, or whatever race, or, if the defendant in either courtroom is black. Furthermore, she testified she did not intentionally or purposefully assign the venire list with only three blacks to the courtroom in which this appellant was to be tried. This was just standard procedure.
Following Ms. Byrd's testimony, the appellant did not offer any evidence that blacks had been purposefully and intentionally excluded from the venire list used in the appellant's case.
The appellant failed to meet the burden of proof on this issue. Therefore, there is *509 not cause for reversal on this issue. Dewhart, supra; Williams v. State, 375 So.2d 1257 (Ala.Crim.App.), writ denied, 375 So.2d 1271 (Ala.1979).

II
In the case at bar, there was an odd number of jurors on the venire list. Since the State had the first strike, it had one additional strike more than the appellant. The appellant contends this is unfair.
As the State indicates in its brief, there is no requirement that each side have an equal number of strikes. Section 12-16-100, Code of Alabama states:
"... the district attorney shall be required first to strike from the strike list the name of one juror, and the defendant shall strike one, and they shall continue to strike off names alternately until only 12 jurors remain on the strike list and these 12 jurors thus selected shall be the jury charged with the trial of the case."
Therefore, we determine that the appellant was not prejudiced on this question.
No error appears.

III
The appellant argues that the State's reference in its opening statement to the fact that Ms. Snell picked the appellant from a photographic lineup was reversible error because it raised the inference that the appellant had a prior criminal record.

III (a)
This contention is without merit. As the State indicates in its brief, the purpose of the opening statement is to allow each side to point out to the jury what it expects the evidence to show. The prosecution, at the time of its opening statement, expected Ms. Snell to tell the jury she had selected the appellant from a photographic lineup. She did this during testimony. Therefore, the prosecutor's statement was properly within the allowable scope of an opening statement.

III (b)
Moreover, during Ms. Snell's testimony, no objection was made to the alleged reference by her earlier extrajudicial identification of the appellant. Further, Ms. Snell made a positive in-court identification of the appellant based on the events on the day of the robbery. Her testimony with reference to this issue is as follows: (R. 21-23).
"Q. I'll ask it this way: Did you give up the six dollars because of what he said to you and the fact that he had a gun on you on that occasion?
"A. Yes, sir.
"Q. And which law enforcement place did you go to after you got in your car?
"A. Down here to Sheriff Hadden's office.
"Q. Did you make a report?
"A. I did, to....
"Q. To Mike Gilley?
"A. Right.
"Q. Did you report to Mr. Gilley as to what had occurred out at Northside Mall?
"A. Yesyes, sir.
"Q. And thereafterspecifically, on March 11, 1983were you shown some photographs by Mr. Gilley?
"A. Yes, sir.
"Q. Did you pick one of the parties out?
"A. Yes, sir.
"Q. as the person that had robbed you?
"A. (Shaking head affirmatively) Yes, sir.
"Q. Specifically, on March 17, 1983, did you view a physical lineup?
"A. Yes, sir.
"Q. Did you pick one of the parties out as the person that had robbed you?
"A. Yes, sir.
"Q. Now, do you see the person in the courtroom today that robbed you back on February 23, 1983, at the Northside Mall?
"A. Yes, sir.
"Q. Where is he, please ma'am? "(Witness points to defendant.)

*510 "Q. Which one?
"A. Right over there (pointing to defendant).
"Q. Is there any doubt in your mind about that?
"A. No, sir.
"MR. BROWN: Let the record indicate that she is pointing to the defendant."
Inasmuch as Ms. Snell's testimony came in without objection with reference to the alleged extrajudicial identification, no error appears. See Fisher v. State, 439 So.2d 176 (Ala.Crim.App.1983) and authorities therein cited.

IV
The appellant filed a motion for a new trial alleging that he was denied a fair trial because there was no need to elicit testimony from Officer Gilley, who showed the photographic lineup to Ms. Snell. Ms. Snell had already identified the appellant in court.
There is no merit to this contention. Ms. Snell had previously testified that she had picked the appellant out of the photographic lineup, and the appellant was not harmed by Officer Gilley's testimony on the same subject. This testimony was cumulative. As noted in III (b) above, no objection was made to Ms. Snell's testimony.
The appellant further alleged that since Officer Gilley had the photographs of the lineup in his possession, the jury could have inferred that the appellant had committed other crimes because the photographs were "mug shots", and the subjects were in prison garb.
We do not agree with the appellant. These photographs were never introduced into evidence and were not shown to this jury. The trial judge, when he denied the appellant's motion for new trial, stated he did not believe the jury could have seen the photographs from the jury box, or ascertained anything about them from that distance.
This record is free of error. The judgment of the trial court is due to be and is hereby affirmed.
APPLICATION OVERRULED; AFFIRMED.
HARRIS, TAYLOR and PATTERSON, JJ., concur.
BOWEN, P.J., dissents with opinion.
BOWEN, Presiding Judge, dissenting.
I respectfully dissent from Part III of the majority opinion of this Court on Application for Rehearing. This second opinion misses the mark as did the first.
In his opening remarks to the jury, the prosecutor argued that he expected the evidence to show that witness Dee Snell "picked out some pictures" in a photographic lineup. The majority opinion states that "the prosecutor's statement was properly within the allowable scope of an opening statement." This statement is blatantly incorrect and is in conflict with prior opinions of this Court wherein we have held that "(i)t is a settled principle of evidence that on direct examination a witness should not be permitted to corroborate his in-court identification by evidence of an earlier extrajudicial identification." Fisher v. State, 439 So.2d 176, 177 (Ala.Cr.App. 1983). Obviously, the witness's expected testimony could not have been impeached or disputed before she even testified. On direct examination of witness Snell, the prosecutor would not have been able to elicit testimony concerning the photographic lineup and he should not have been allowed to argue that fact to the jury for the same reason.