479 So.2d 1349 (1985)
Thomas Eugene CRAWFORD
v.
STATE.
4 Div. 428.
Court of Criminal Appeals of Alabama.
July 23, 1985.
Rehearing Denied August 20, 1985.
Certiorari Denied November 27, 1985.
*1351 Francis M. James III of James & James, Andalusia, for appellant.
Charles A. Graddick, Atty. Gen., and Tommie Wilson, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 84-1262.
TYSON, Judge.
Thomas Eugene Crawford was indicted for theft in the first degree in violation of § 13A-8-3, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and the trial judge sentenced him to life imprisonment in the penitentiary as a habitual felony offender.
Paul Hattaway testified that at 11:30 p.m. on June 15, 1984, he parked his 1979 white with brown Dodge pickup truck in front of the old Florala Hardware Store on Fifth Avenue. He and his wife, Katherine, got out of the truck and went inside the store to look at furniture. They came out about fifteen minutes later and the truck was gone. Neither Hattaway nor his wife had given anyone permission to take or use their truck. Hattaway reported the truck theft to Gary Hutcheson, a police officer. The owners of the truck were Hattaway and his wife. The truck's vehicle identification number was D14JE9S157766 and the license tag number was 23A 3469.
Gary Hutcheson stated that on June 20, 1984, he was a Florala Police Officer and was on patrol when he saw a Buick emerge from an alley behind the Zippy Mart. He did not recognize the vehicle so he eased up to see who was in the Buick. As he did, the Buick took off at a high rate of speed. Hutcheson turned on the patrol car's siren and blue lights and began chase. During the chase, Hutcheson called in the tag number on the Buick (23A 3469) and found out it was the tag number of Hattaway's truck. Hutcheson finally stopped the Buick onequarter mile into Florida across the state line.
The driver of the Buick got out and Hutcheson recognized him as the appellant. Hutcheson then told the appellant to place his hands on top of his vehicle. As Hutcheson approached the appellant he stated, "Gary, before you start investigating this car, the tag on it is from the truck that was stolen this past Friday night." (R. 15-16). The appellant was then advised of his Miranda rights. Hutcheson then asked the appellant if he would come back to Florala and make a statement about the truck. The appellant agreed and was transported back to Florala, Alabama.
Once back at the station in Florala, the appellant was again advised of his Miranda rights. The appellant, Crawford, stated that on the night of June 15, 1984, he and his wife were walking in Florala when he saw a white Dodge truck parked on the street with the keys in the ignition. He and his wife got in the truck and drove to Lake Wales, Florida. There, they traded the truck for a 1972 Buick. The truck tag was placed on the Buick. The two then returned to Florala, Alabama and were later stopped by Officer Hutcheson.
*1352 After the appellant gave this statement, he signed it. He was then charged with theft in the first degree.
A teletype was then sent to the Polk County, Florida Sheriff's Department and the Florala Police Department then received directions to a house in Lake Wales. Hutcheson went to Lake Wales and went to this house. A cousin of the appellant was at this house and Hattaway's truck was located there. Hutcheson took possession of the truck and returned it to Hattaway, the owner.

I(a)
The appellant claims that the statement he made immediately after he was stopped by Officer Hutcheson and the statement he made later after he was taken back to Florala were improperly admitted into evidence.
After the appellant was stopped by Hutcheson, he exited the Buick and started walking toward Officer Hutcheson. Hutcheson told him to stop and place his hands on the top of vehicle. The appellant then stated, "Gary, before you start investigating this car, the tag on it is from the truck that was stolen this past Friday night." (R. 25-26). The appellant contends that this statement should have been excluded because he was not advised of his Miranda rights before he made the statement at issue. This contention is without merit.
"A spontaneous statement, blurted out by the accused and volunteered to a police officer prior to any questioning, is admissible against him even though he was not given the Miranda warnings. Hammons v. State, 371 So.2d 986 (Ala.Cr.App. 1979); Epsy v. State, 365 So.2d 356 (Ala.Cr. App.1978). An unsolicited remark, not in response to any interrogation, does not fall within the Miranda rule. Hammons, supra." Bedingfield v. State, 47 Ala.App. 677, 260 So.2d 408 (1972). Ervin v. State, 399 So.2d 894, 897 (Ala.Crim.App.), cert. denied, 399 So.2d 899 (Ala.1981). Clearly, the statement made by the appellant at this time was spontaneous and not in response to any interrogation by Hutcheson. Therefore, the statement was not in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965) and, thus, was properly admitted into evidence. See Johnston v. State, 455 So.2d 152 (Ala.Crim.App. 1984).

I(b)
There was evidence presented at trial that the appellant had been drinking prior to the time he was stopped by Hutcheson. The appellant challenges the voluntariness of both of his statements on the ground that he had been drinking prior to making these statements. While there was evidence that the appellant had been drinking, there was no evidence that he was intoxicated to the extent that he suffered such an impairment of his will and mind that would have rendered him unconscious of the meaning of his statement. Myers v. State, 431 So.2d 1342 (Ala.Crim. App.1982), writ quashed 431 So.2d 1346 (Ala.1983); Borden v. State, 401 So.2d 802 (Ala.Crim.App.), cert. denied, 401 So.2d 804 (Ala.1981). Bedingfield, supra. Therefore, we find that the appellant's statements were not rendered involuntary as a result of his asserted intoxication.

I(c)
Lastly, the appellant asserts that the two statements should have been excluded because they were the fruit of an unlawful arrest.
Even though Officer Hutcheson stated he did not "arrest" the appellant when he stopped him in Florida, the appellant was under arrest for all practical purposes. The appellant's freedom of movement was curtailed with the intention of detaining him to answer criminal charges. Sheridan v. State, 43 Ala.App. 239, 187 So.2d 294, cert. denied, 279 Ala. 674, 189 So.2d 470 (1966), cert. denied, 385 U.S. 1019, 87 S.Ct. 747, 17 L.Ed.2d 556 (1967); McCants v. State, 459 So.2d 992 (Ala.Crim. App.1984); United States v. Robinson, 650 F.2d 537 (5th Cir.1981).
*1353 Therefore, we must look to the laws of the State of Florida to determine if the appellant's arrest was lawful.
Section 941.31, Florida Statutes Annotated (1982) reads as follows:
"Any duly authorized state, county or municipal arresting officer of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit, of a person in order to arrest him on the ground that he is believed to have committed a felony in such other state, shall have the same authority to arrest and hold such person in custody, as has any authorized arresting officer, state, county or municipal, of this state, to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this state."
The appellant contends that Hutcheson was in fresh pursuit of a reckless driving charge, a misdemeanor, and, therefore, did not have any power to arrest the appellant under the above-quoted provision of law. However, even though the initial pursuit began due to reckless driving, there was testimony that Hutcheson, during the chase, called in the tag number of the Buick and learned it was from Hattaway's truck. Since the appellant was stopped only one-quarter of a mile into Florida, it is most likely that this information was obtained during the chase while still in Alabama. Thus, when Hutcheson stopped the appellant, he did have reason to suspect the appellant had committed a felony in the State of Alabama and was empowered to arrest the appellant according to § 941.31, Florida Statutes Annotated (1982).
Furthermore, § 941.33, Florida Statutes Annotated (1982) states that "Section 941.31 shall not be construed so as to make unlawful any arrest in this state which would otherwise be lawful." The appellant's arrest certainly would have been lawful in the State of Alabama and, therefore, even if Hutcheson was not aware of the information concerning the tag on the Buick when he stopped the appellant and did not have reason to suspect that a felony had been committed in Alabama, the Florida statute in question does not operate to make this arrest unlawful.

I(d)
The appellant further contends that the appellant's arrest was unlawful because Hutcheson failed to comply with § 941.32, Florida Statutes Annotated (1982). This section provides that:
"If an arrest is made in this state by an officer of another state in accordance with the provisions of § 941.31, he shall without unnecessary delay take the person so arrested before a county court judge or other judicial officer having jurisdiction of commitment, of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest. If the committing judicial officer determines that the arrest was lawful he shall commit the person arrested to await for a reasonable time the issuance of an extradition warrant by the Governor of this state, or admit him to bail for such purpose. If the committing judicial officer determines that the arrest was unlawful he shall discharge the person arrested."
It is clear from the evidence that the procedure set out in § 941.32, Florida Statutes Annotated (1982) was not followed by Hutcheson in the present case. The appellant was never taken before a judge in Florida to determine if the arrest was lawful and no extradition warrant was ever issued prior to the time the appellant was returned to Alabama.
However, this court does not believe that this omission should be used to exclude the appellant's statements. Although this point of law has not been decided in this state, a factually similar case was decided in Commonwealth v. Neubauer, 142 Pa. Super. 528, 16 A.2d 450 (1940). In that case, a defendant was arrested in Ohio for an offense which occurred in Pennsylvania. The defendant voluntarily returned to Pennsylvania without a requisition warrant, and on that basis, the Pennsylvania court held that the defendant's arrest was *1354 not illegal. See also Klotz v. Cook, 184 Ky. 735, 212 S.W. 917 (1919); In re Popejoy, 26 Colo. 32, 55 P. 1083 (1899); Amsler v. United States, 381 F.2d 37 (9th Cir. 1967).
Therefore, since the appellant returned voluntarily to Alabama with Officer Hutcheson, the fact that he was not taken before a judge in Florida does not render his arrest illegal. Thus, his statements cannot be said to be the "fruits of an illegal arrest."
Even had we found the arrest to be illegal under Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982) and the cases that preceded it, we hold that the appellant's statements still would have been admissible. The appellant's voluntary act of returning to Alabama with Hutcheson was an intervening event which would have broken the causal connection between the alleged illegal arrest and the confession at issue. His statement to Hutcheson upon getting out of the car that the tag was from the stolen truck and his willingness to return to Alabama were "sufficiently an act of free will to purge the primary taint." Taylor, supra at 690, 102 S.Ct. at 2669.
Therefore, we hold that the appellant's statements were properly admitted into evidence.

II
The evidence adduced at trial showed that both Paul Hattaway and his wife, Katherine, owned the Dodge pickup truck in question. The appellant contends that the State failed to make out a prima facie case because it did not prove the truck was taken without the consent of Katherine Hattaway. We do not agree.
"The nonconsent to the taking of property of another may be established by circumstantial evidence as in the case of proof of any other issue of fact." Hinote v. State, 395 So.2d 116, 118 (Ala.Crim.App. 1980), cert. denied, 395 So.2d 119 (Ala. 1981). See also Coates v. State, 36 Ala. App. 371, 56 So.2d 383 (1952).
In the case at bar, Paul Hattaway testified that his wife was with him when he discovered that the truck had been stolen. He stated that she had not given her consent to anyone to take the truck in his presence or within his knowledge. We hold that the State did offer sufficient proof of Katherine Hattaway's nonconsent to the taking of the truck. Her direct testimony was, therefore, unnecessary in this instance. See Gunaca v. State, 383 So.2d 590 (Ala.Crim.App.1980).

III
The appellant next asserts there was a fatal variance between the indictment and the evidence presented at trial because the indictment stated that Paul Hattaway owned the pickup truck and the evidence at trial showed that Paul and Katherine Hattaway owned the truck.
"In an indictment for grand larceny, this court has stated that if ownership of the stolen property is joint, it is sufficient to allege ownership in either owner." Scott v. State, 55 Ala.App. 318, 314 So.2d 921, 923 (1975) and authorities cited.
The appellant distinguishes the case at bar from Scott, supra, on the basis that in Scott, supra, both owners of the stolen property testified. This is not an important distinction. We do not find that there was a material variance between the indictment in this case and the proof adduced at trial. See Baldwin v. State, 380 So.2d 388 (Ala. Crim.App.1980); Ala.Code, § 15-8-33 (1975).
The appellant was not mislead by the fact that the indictment charged the truck belonged to Paul Hattaway. He was certainly aware of the property that had been alleged to have been stolen and was not hampered in his defense by the suggested variance between the indictment and the proof presented at trial.

IV
The appellant contends that the admission into evidence of the original and certified copies of the truck's tag receipt *1355 was error. He asserts that, since the truck's certificate of title was available to the State, it should have been used to prove ownership as the "Best Evidence."
The contents of the certificate of title were not directly in issue and the Best Evidence Rule was not violated by allowing Hattaway to testify as to the ownership of the truck or by the admission of the original and copies of the tag receipt. See Waters v. W.O. Wood Realty Co., 260 Ala. 527, 71 So.2d 1 (1954); Schreiber v. Equico Lessors, 428 So.2d 69 (Ala.Civ.App.1983); Parker v. Muse, 47 Ala.App. 84, 250 So.2d 688 (1971).

V
Just before the trial of this case was to begin, the appellant told the trial judge he didn't feel his attorney could represent him well because his attorney had been the municipal judge in another case in which the appellant had been involved. The appellant then asked the court for a continuance so he could hire another attorney. The trial judge denied this motion and the case went to trial.
As the appellant concedes in his brief, the decision whether to remove an appointed counsel and appoint another counsel for defendant is within the sound discretion of the trial court. Tudhope v. State, 364 So.2d 708 (Ala.Crim.App.1978). A review of the circumstances in this case clearly demonstrates to this court that the trial court did not abuse his discretion in this matter.
The appellant knew that his attorney had been the judge in the other case when the attorney took this case. The appellant was before the court on three occasions before this trial and had the opportunity, if he wished, to protest the choice of his attorney. In fact, the appellant had six weeks in which to complain about his attorney but chose not to do so until the day of his trial. Therefore, we hold the trial court properly overruled the appellant's request to change counsel.
Moreover, under the record of this cause, as filed in this court, we find that his trial counsel did provide the effective assistance of counsel required by law. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's brief also shows this. Likewise, we see no "conflict of interest" by virtue of his trial counsel representing Crawford at trial simply because he had formerly served as municipal judge. See Ray v. State, 398 So.2d 774 (Ala.Crim.App.1981) and Terry v. State, 424 So.2d 710 (Ala. Crim.App.1982).

VI
The appellant asserts that the trial court improperly considered four prior felony convictions because the State failed to prove that the appellant was the same Thomas Eugene Crawford that was named in these previous judgments. This assertion is without merit.
The appellant's name is identical to that on the judgment entries. "Identity of name raises a presumption of person." Williams v. State, 364 So.2d 717 (Ala.Crim. App.1978); McCord v. State, 373 So.2d 1242 (Ala.Crim.App.1979).
The appellant made no attempt to rebut this presumption and, therefore, the trial judge properly considered these prior convictions as being those of this appellant.

VII
Following the trial court's oral charge to the jury, defense counsel objected to "the court's refusal to give those written charges which you did not give." (R. 50). Defense counsel's general objection was not sufficient to preserve this issue for our review. Rule 14, Alabama Temporary Rules of Criminal Procedure. Allen v. State, 414 So.2d 989 (Ala.Crim. App.1981), affirmed, 414 So.2d 993 (Ala. 1982).
We have carefully examined this record and find no error. The judgment is, therefore, affirmed.
AFFIRMED.
*1356 All the Judges concur.
BOWEN, P.J., concurs in result only, with opinion.
BOWEN, Presiding Judge, concurring in result.
I concur only in the result reached by the majority. Although it constitutes mere dictum, the majority finds that the appellant's voluntary act of returning to Alabama "was an intervening event which would have broken the causal connection between the alleged illegal arrest and the confession at issue." I disagree. The appellant's act of submitting to Officer Hutcheson's custody and control cannot be considered such an intervening event as would purge the taint of any illegal arrest.