533 So.2d 645 (1987)
Richard Lancaster CARLISLE
v.
STATE.
6 Div. 987.
Court of Criminal Appeals of Alabama.
June 30, 1987.
Rehearing Denied September 8, 1987.
Certiorari Denied December 4, 1987.
On Return to Remand September 20, 1988.
*646 Andrew LaPlante, Bessemer, for appellant.
Charles A. Graddick, Atty. Gen., and Jean Williams Brown, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-1619.
McMILLAN, Judge.
The appellant, Richard Lancaster Carlisle, was convicted of a violation of the Alabama Uniform Controlled Substances Act, § 20-2-70, Code of Alabama (1975), and sentenced to twenty-two years' imprisonment.
Officer Reuben Wilkinson of the Fairfield Police Department testified that, while he was on patrol at approximately 5:00 p.m., he observed the appellant carrying a paper sack and walking down the *647 street. Wilkinson testified that he was driving at a rate of approximately five to ten miles per hour and, during his observation of the appellant, came within 75 to 100 feet of him at the closest point. The appellant looked over his shoulder, back in the vicinity of Officer Wilkinson, several times and then dropped the sack onto a median between the street and the sidewalk. He continued walking and turned down a side street. Officer Wilkinson picked up the sack and observed a brown leather bag inside, whereupon he radioed for assistance. He stopped the appellant, patted him down, and placed him in the back of his patrol car. Shortly thereafter, Officer Wilkinson opened the leather bag and found a .32 caliber revolver, cigarette papers, a brown glove, small manila envelopes, a small envelope containing a white powdery substance, and a cigarette package filled with four small bags of the white powdery substance. He then took the appellant to the police station.

I
The appellant argues that there was no probable cause to arrest him in that he was walking "in a place where it is not unusual for people to be walking, and merely dropped a bag and kept walking, before he was arrested." However, this is a case where the existence of probable cause need not be determined, because the act of dropping the bag to the median constituted an abandonment. United States v. Speed, 388 A.2d 892, 893 (D.C. App.1978).
"The distinction between abandonment in the proper law sense and abandonment in the constitutional sense is critical to a proper analysis of the issue. In the law of property, the question ... is whether the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully exert his superior interest Brown, Personal Property (3d) § 1.6. In the law of search and seizure, however, the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. Cf. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.
"Where the presence of police is lawful and the discard occurs in a public place where the defendant cannot reasonably have any continued expectancy of privacy in the discarded property, the property will be deemed abandoned for purposes of search and seizure. Such is the case here."
City of St. Paul v. Vaughn, 306 Minn. 337, 237 N.W.2d 365, 370-71 (1975).
In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), the United States Supreme Court held that a warrantless seizure of abandoned property by the police does not violate the Fourth Amendment. See also Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).
"When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had. United States v. Berd, 634 F.2d 979, 987 (5th Cir.1981). Therefore, a warrantless search or seizure of abandoned property is not unreasonable under the Fourth Amendment. [Citations omitted.] The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary. United States v. Colbert, 474 F.2d 174, 176 (5th Cir.1973); see generally, e.g., Berd, 634 F.2d at 987; United States v. Canady, 615 F.2d 694 (5th Cir.), cert. denied, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); United States v. Williams, 569 F.2d 823 (5th Cir.1978); [United States v.] D'Avanzo, 443 F.2d 1224 [(2d Cir.), cert. denied, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971) ].
"The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. [Citation omitted.] This determination is to be made by objective standards. United *648 States v. Kendall, 655 F.2d 199, 201 (9th Cir.1981), cert. denied, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). An expectation of privacy is a question of intent, which `may be inferred from words spoken, acts done, and other objective facts.'"
United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.1983), cert. denied, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983). See also State v. Reed, 284 So.2d 574, 575 (La. 1973).
The appellant, in a similar case, People v. Sylvester, 43 Ill.2d 325, 253 N.E.2d 429 (1969), placed a brown paper bag containing drugs on the curb of a public street immediately before entering a police car. The Illinois Supreme Court stated:
"In our judgment determination of the validity of the arrest is irrelevant as are the arguments relating to the reasonableness of a search, for in this case no "search" ever occurred. The bag was sitting in plain and open view on the sidewalk curb where it had been abandoned by defendant, and its seizure by the officers under these circumstances in no way violated any constitutional rights of defendant. People v. Martinez, 257 Cal.App.2d, 270, 64 Cal.Rptr. 666 [1967]; United States v. Clark (W.D.Pa. [1968]), 294 Fed.Supp. 1108." 43 Ill.2d 325, at 327-28, 253 N.E.2d 429, at 430."
See also, People v. Hoskins, 101 Ill.2d 209, 78 Ill.Dec. 107, 461 N.E.2d 941, 946, cert. denied, Hoskins v. Illinois, 469 U.S. 840, 105 S.Ct. 142, 83 L.Ed.2d 81 (1984).
"The great majority of the court decisions having to do with the abandonment of effects in a search and seizure context are similar ... in that it appears the defendant tried to dispose of certain incriminating objects upon the lawful approach of or pursuit by the police. Thus, effects have been held to be abandoned when they were thrown from a car or motorcycle, when they were dropped to the ground by a pedestrian, when they were left behind in a place accessible to the general public, and when they were thrown out of the window of a residence."
W. LaFave, Search and Seizure (2d ed 1987), § 2.6(b) at 466.
"Only if the abandonment had been precipitated by an illegal detention would the property been rendered inadmissible evidence." Gipson v. State, 459 N.E.2d 366, 367 (Ind.1984). "To fall outside of fourth amendment protection, a defendant's abandonment of evidence cannot be the product of unlawful police conduct. United States v. Beck, 602 F.2d 726, 729 (5th Cir.1979)." United States v. Koessel, 706 F.2d 271, 274 (8th Cir.1983). "If, however, property is abandoned without any prior unlawful intrusion into a citizen's right of freedom from governmental interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights." State v. Andrishok, 434 So.2d 389, 391 (La.1983).
"`If the officer does nothing, or if he simply places the individual under surveillance, in the belief that he may possibly witness some criminal activity, then there will be no issue of unreasonableness.
If, however, the officer, without benefit of probable cause, and acting strictly on a "hunch," or because of suspicion based upon personal knowledge or hearsay, decides to follow the individual, and proceeds to hound him in a harassing manner, hoping that the individual will panic in the belief that he had better "ditch the stuff" before there is a shakedown, then an issue of major constitutional proportions will arise.' Since the individual cannot possibly know in advance how far the officer will go, he has no way of gauging a prudent course. If the officer continues to close in, the individual has to anticipate a search. To do nothing means certain discovery. To attempt a discard is to invite a retrieve, thereby giving the officer probable cause to arrest...
"`There is no meaningful distinction of constitutional significance between unreasonable search and seizure activity, and harassing official conduct outside the legitimate investigative sphere which prompts an individual to reveal what would otherwise be impermissible for the *649 police to seek by means of a search of his person. In short, the police may not do indirectly what is denied to them directly. In either event, they will be engaging in conduct equally unreasonable under the fourth amendment, which, apparently, has been recognized by both the Supreme Court and several lower courts. If a question, an observation, or an act of hearing, can each be considered part of the search process, there seems little reason why the same reasoning may not equally apply to harassing police conduct that seeks to prompt the victim into revealing what would otherwise be the product of an unreasonable search and seizure if conducted by the officer. Therefore, if overbearing conduct outside the realm of legitimate investigation falls beyond the pale of the fourth amendment, any attempt to exploit it by retrieving its fruits for subsequent use in a criminal prosecution should be condemned and suppressed under the same authority.'"
W. LaFave, supra, at 473-74, quoting Mascolo, The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis, 20 Buff.L. Rev. 399, 400-01 (1971) (arguing that police conduct short of a legal arrest and illegal initial detention may still violate the protections of the fourth amendment).
An illegal stop or arrest may be cured when a defendant voluntarily abandons evidence. Swicegood v. State, 448 So.2d 433, 434 (Ala.Cr.App.1983); United States v. Beck, 602 F.2d 726 (5th Cir.1979). The appellant, in the case sub judice, voluntarily abandoned the bag prior to his arrest or any police misconduct. Thus, the issue of whether the police had probable cause to arrest the appellant is inconsequential.

II
The appellant argues that the trial court erred in considering the State's proof of prior convictions in sentencing him under the Habitual Felony Offender Act. Specifically, the appellant alleges that four of the exhibits used by the State to prove prior convictions did not affirmatively show that the appellant was represented by an attorney or had waived that right and that one of the exhibits did not show that the Richard Carlisle in the conviction was the same Richard Carlisle presently before the judge. He further argues that the latter exhibit was not a proper authentication or certification of the court record. The record indicates that the trial judge noted that the State's exhibits "reflect that the defendant was represented by counsel at arraignment" in the prior case and that the last exhibit "has a transcript of a fairly complete colloquy in regard to the plea of guilty and the fact he was represented by counsel." Furthermore, the exhibits reveal that the appellant's attorney signed as having been present at the appellant's arraignment. The record indicates that the last exhibit fails to contain "a certificate of the judge, chief justice or presiding magistrate that the said attestation is in due form." § 12-21-70, Code of Alabama (1975). Therefore, this case must be remanded for a new sentencing hearing, McBride v. State, 480 So.2d 619, 620 (Ala.Cr.App.1985), because the appellant was convicted of a Class C felony, which, after three prior felony convictions, has under the Habitual Felony Offender Act, a range of punishment of imprisonment "for life or for any term not more than 99 years, but not less than 15 years." § 13A-5-9(c)(1).
The appellant also claims that he is not the same Richard Carlisle who was the subject of one of the previous indictment. The appellant's argument has been addressed many times by this court.
"Once the State has made proper proof of prior convictions for sentence enhancement purposes, and an objection to that proof is made, the defendant bears the `burden of presenting evidence in support thereof.' Tate v. State, 435 So.2d 190, 195 (Ala.Cr.App.1983) (citation omitted). At the trial court level, the appellant offered no evidence in support of his claim that the person named in the prior convictions was not one and the same as the appellant in the instant case. As this court has stated, `identity of name raises a presumption of person.' Crawford v. *650 State, 479 So.2d 1349, 1355 (Ala.Cr.App. 1985) (citations omitted). `There is a prima facie presumption that where two names are identical that those names refer to the same person.' Davis v. State, 457 So.2d 992, 995 (Ala.Cr.App.1984)."
Smith v. State, 492 So.2d 638, 642 (Ala.Cr. App.1986).

III
The appellant argues that the trial court erred in denying his motion for acquittal based on the State's alleged failure to show that the appellant had actual or constructive knowledge of the cocaine.
"The three elements which are necessary to prove possession of marijuana are ... `(1) actual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.' Franklin v. State, 437 So. 2d 609 (Ala.Crim.App.1983): Jones v. State, 432 So.2d 5 (Ala.Crim.App.), cert. denied, 432 So.2d 5 (Ala.1983).
"In addition to these three elements, the State must also prove that the accused had knowledge of the presence of [the controlled substance]. Jones, supra; Roberts v. State, 349 So.2d 89 (Ala.Crim. App.), cert. denied, 349 So.2d 94 (Ala. 1977)."
White v. State, 479 So.2d 1368, 1376 (Ala. Cr.App.1985).
In White, after the police had stopped the car in which the appellant was riding, the appellant was seen throwing a bag out of the car window. A bag containing marijuana was then found in close proximity to the car. This court found:
"The act of the appellant throwing the brown paper bag out of the car window, coupled with surrounding circumstances, was sufficient to prove the appellant's possession of the marijuana and his knowledge of the presence of marijuana in the brown bag in question. The appellant's actions showed his actual physical control of the bag containing marijuana, his intention to exercise dominion of it and an external manifestation of his intent and control. Furthermore, the act of throwing the bag out of the window when the car was stopped by the police tended to show the appellant's guilty conscience. It is obvious that he threw the bag away so that the marijuana would not be found in the car or on his person. "`... [C]ircumstantial evidence sufficient to support a jury finding of guilt [of possession of marijuana] may be found in the accumulation of several relatively insignificant pieces of evidence; or it may be presented in the form of a single highly significant or incriminating event.' Jones, supra, at 7."
Id. at 1377. We find no error in the trial court's denial of the motion for acquittal.

IV
The appellant contends that the trial court erred in denying his motion for mistrial based on "prejudicial statements" made by Sergeant Jerry Drummond. The following transpired during the direct examination of Sergeant Drummond:
"Q: All right. Thank you. Did you conduct any other investigation as part of what took place here behind Whiten's Cleaners?
"A: The pistol that was concerned with it, I checkedran that through the NCIC to see if it was stolen. It came back not stolen. Officer Wilkinson told me
"[Defense counsel]: Your Honor, I object to what Officer Wilkinson told him.
"THE COURT: Sustained.
"A: Okay. I also checked with the State Probation Officer.
"[Defense counsel]: Object, Your Honor.
"THE COURT: State your next question, Mr. Litton."
Thereafter, the defense counsel moved for a mistrial, complaining that the statement referring to the state probation officer "put the idea in the minds of the jury that [the appellant] has been so convicted of some crime." The trial court denied the motion, noting that the witness did not complete his answer and offering to give an instruction to the jury to disregard the statement "in as strong a terms [sic]" as possible. The defense counsel refused the instructions.
*651 Initially, "[t]he trial court will not be put in error for admitting evidence over a general objection unless the matter is clearly inadmissible for any purpose and cannot be made legal by supplying other evidence. Ward v. State, 376 So.2d 1112 (Ala.Cr. App.), cert. denied, 376 So.2d 1117 (Ala. 1979)." Woods v. State, 437 So.2d 636, 638 (Ala.Cr.App.1983). Further, had the trial court instructed the jury to disregard the statement, the prejudicial effect would have been cured. Bradley v. State, 450 So.2d 173 (Ala.Cr.App.1983); Richardson v. State, 374 So.2d 433 (Ala.Cr.App.1979). The appellant cannot now complain that he was prejudiced by this statement when the defense counsel refused the trial court's offer to make such an instruction to the jury.

V
The appellant argues that the trial court erred in admitting two of the State's exhibits because one of the State's witnesses could not testify to a certainty that they were in the same condition they were in the last time he had seen them. The record indicates that when the appellant was apprehended, Officer Rubin Wilkinson took the wrapped cocaine into custody and initialed each of the wrappers around the cocaine. He then placed the cocaine in a sealed brown manila envelope. Officer Wilkinson, at trial, was asked to open the sealed envelope and display the wrapped cocaine, which revealed the absence of his initials on the wrappers. However, he stated that he thought that he had written his initials on the wrappers. Wilkinson further testified that after he had sealed the envelopes he placed them in his locker until they were turned over to Sergeant Drummond. Sergeant Drummond testified that he delivered the cocaine to Mary Holt with the Department of Forensic Sciences. Mary Holt testified that she analyzed the substance, resealed it and kept it locked up until Sergeant Drummond returned to retrieve it. Sergeant Drummond testified that when he retrieved the substance, it was in a resealed container, which he kept locked up in the evidence locker at the police department. He testified that no one else had a key to the locker.
The defense counsel, on voir dire examination, questioned Officer Wilkinson concerning his initialing of the wrappers around the cocaine. Officer Wilkinson testified that this was his first occasion of handling "anything like this" since he had been a police officer. He further testified that he thought that he had marked it, but he didn't know "whether the ink has rubbed off or if [he] failed to mark this pack." He further testified that, although the wrapping looked like the one that he had used, he could not be certain that it was the identical cellophane or that it had not been tampered with.
"The purpose of establishing a chain of custody is to show a reasonable probability that there has been no tampering with the item of evidence. Bell v. State, 339 So.2d 96 (Ala.Crim.App. 1976). In passing upon the admissibility of such evidence, `the trial judge should consider the nature of this article and the circumstances surrounding its preservation and custody,' and permit its introduction where continuity of possession is `sufficiently established to afford ample assurances of ... authenticity. Washington v. State, 339 So.2d 611, 615 (Ala.Crim. App.), cert. denied, 339 So.2d 616 (Ala. 1976) (citations omitted)." Oliver v. State, 479 So.2d 1385, 1390 (Ala. Cr.App.1985). See also Ex parte Williams, 505 So.2d 1254 (Ala.1987).
"`The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain.'" Slaughter v. State, 411 So.2d 819, 822 (Ala. Crim.App.1981). Fleming v. State, 470 So. 2d 1343, 1346 (Ala.Cr.App.1985), Fleming v. Alabama, 474 U.S. 857, 106 S.Ct. 164, 88 L.Ed.2d 136 (1985).
Officer Wilkinson testified that, aside from his initials, by examination of the contents of the envelope, the State's exhibit was the same substance and same container *652 that he had found in the paper bag taken into custody upon the apprehension of the appellant. Wilkinson had further testified that he immediately placed the substance in the manila envelope, wrote on the envelope, and sealed it with Scotch tape. The envelope which contained the State's exhibits at trial was identified by Wilkinson as the one which he had filled out following the apprehension. Considering Officer Wilkinson's testimony that this was his first time for handling such evidence and that he "believed" that he had marked it, the fact that no initials were found on the wrappings should go to the weight of the evidence, not its admissibility. United States v. Clark, 732 F.2d 1536 (11th Cir.1984). See also Lott v. State, 456 So.2d 857, 861 (Ala.Cr.App.1984) ("conflicts of testimony concerning the chain of custody go to the credibility rather than the admissibility of the evidence").

VI
The appellant argues that the trial court erred when it permitted the envelope containing the cocaine into evidence because the trial court sustained the defense counsel's objection to the admission of the property log. The appellant submits that this property log was "required to show the chain of custody of the illegal substances allegedly taken." The record indicates that in sustaining the defense counsel's objection to the admission of the property log, the trial court noted that the log was cumulative. The property log showed the transfer of cocaine from Officer Wilkinson to Sergeant Drummond to Mary Holt. Because all three of these witnesses testified, the log would have been cumulative. See, e.g., Brooks v. State, 471 So.2d 507 (Ala.Cr.App.1984); Lewis v. State, 414 So. 2d 470 (Ala.Cr.App.1982); Gullatt v. State, 409 So.2d 466 (Ala.Cr.App.1981). Also see the discussion in the previous issue.
JUDGMENT OF CONVICTION AFFIRMED; REMANDED FOR NEW SENTENCE HEARING.
All the Judges concur.

On Return to Remand
McMILLAN, Judge.
This case was remanded to the trial court for a resentencing hearing, which was held on January 5, 1988. The trial court sentenced the appellant to a term of 15 years and ordered that he be given credit for all of the actual time spent incarcerated in the Jefferson County Jail awaiting trial, unless he was serving time for another offense. A corrected transcript was submitted to the Alabama Department of Corrections. The trial court's action in resentencing the appellant is due to be affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.